JAMES McANDREWS, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 13, 1900.

1. Personal Injury: NEGLIGENCE: CONTRIBUTORY NEGLI-GENCE: NOTICE OF PLAINTIFF'S DANGER. It may be conceded that plaintiff went upon the street with his wagon without looking and listening for the approach of cars, and continued to use the street without looking, yet that would not excuse defendant from the exercise of ordinary care, in avoiding injuries to plaintiff, and such care would impose upon defendant, after discovering plaintiff's peril, the duty, if he could, of stopping the car to avoid the injury of plaintiff.

2. ————: ————: PROXIMATE CAUSE. It was proper that the jury should pass upon the question of the proximate cause of the injury to plaintiff, as was done in this case.

3. ————: ————: ORDINANCE: BASIS OF CIVIL LIABILITY. Before plaintiff can make an infraction of a municipal ordinance, the basis of his action against a street railway for damages on account of personal injuries, he must show by proof the existence of such ordinance, and its acceptance by the defendant.

Appeal from the St. Louis County Circuit Court.—*Hon. Rudolph Hirzel*, Judge.

REVERSED AND REMANDED.

*McKeighan, Barclay & Watts* and *R. A. Holland, Jr.,* for appellants.

(1) The court should have given the instruction asked for by the defendant, both at the close of the plaintiff's and of the whole evidence in the case, in the nature of a demurrer. The plaintiff's own evidence showed that he did not look or listen before going upon the track, although he

had been driving alongside of it for from five to six blocks, and had not noticed any car go by, and therefore should have expected that one was near at hand.   His own evidence also showed that, after going on the track under circumstances which should have lead him reasonably to expect that a car would be soon coming, he had never looked back until the car struck his wagon.   We have, therefore, not merely the case of the previous negligence of the plaintiff casting upon the defendant the duty of stopping the car notwithstanding plaintiff's negligence, but we have a case of continuing negligence of the plaintiff down to the time of the accident.   In such a case the negligence of the plaintiff and of the defendant (if the defendant was negligent) was mutual negligence at the time of the accident; and, therefore, the plaintiff is not entitled to recover at all or to have his case considered by a jury.   Watson v. Railroad, 133 Mo. 246; Beach on Cont. Neg., sec. 56; Schmidt v. Railroad, 50 S. W. Rep. 925 (particularly par. 3); Butts v. Railroad, 98 Mo. 272; Easely v. Railroad, 113 Mo. 236; Payne v. Railroad, 136 Mo. 562; Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 362.   (2) The court erred in casting upon the defendant the duty of observing the provisions of the ordinance pleaded in plaintiff's petition and introduced in evidence. The ordinance was properly permissible in evidence at the time that it was offered because it was pleaded, but the plaintiff failed to prove (as he had pleaded, and necessarily pleaded) that the defendant had accepted the ordinance. Having so failed, the plaintiff was not entitled to the instructions based upon the provisions of the ordinance, and the court, therefore, erred in giving instructions 1 and 2 asked by plaintiff; in refusing to give instructions 6 and 7 asked by defendant; and in modifying said instructions 6 and 7, and giving them of its own motion as modified.   It has been expressly decided by the supreme court (although

after the trial of this case and the overruling of the motion for a new trial) that it was not only necessary for the plaintiff to plead such an ordinance, but also to prove it, and that it was also necessary to plead and prove its acceptance. Fath v. Railroad, 105 Mo. 537; Saunders v. Railroad, 147 Mo. 411; Byington v. Railroad, 147 Mo. 673.

*A. R. Taylor* for respondent.

(1) The act of the plaintiff in driving on and along defendant's track was not negligence. He had the same right upon the street as the street car, and to avoid the obstruction he had the right to use the portion of the street occupied by defendant's track. Henry v. Railroad, 113 Mo. 535-536. (2) So that if, as plaintiff's evidence shows, he drove upon the track at Twenty-second street and continued driving thereon for ninety feet in a trot until he was passing the wagons, and defendant's car followed that distance and collided with his wagon from behind, when by stopping or slackening the speed of the car, as the evidence showed the motorman could have readily done in one-third the distance, in such case there was no negligence upon the part of the plaintiff. (3) It is a mistake to suppose that a citizen may not pass over or along the portion of a street on which a street railway runs without being guilty of negligence. The relation of the citizen and street car company upon the street is one of relative duty. If the citizen is on the track sufficiently far ahead of the car to enable the motorman to slacken or stop the car and prevent collision it is his duty to do so. Otherwise, there would be given a monopoly of the use of a portion of the street to the company—which could not be done. (4) But even if it be conceded that the plaintiff was negligent in driving upon the track without looking back for the approach of a car, still, under the well-settled

law of this state, and almost all other jurisdictions, it was incumbent upon the motorman to have averted the collision after he saw the danger, no matter how negligent the plaintiff may have been. In Werner v. Railroad, 81 Mo. 374, this doctrine is strongly announced and has not been departed from in this state to date. In the Werner case, *supra*, a man was lying supine upon the track in a state of intoxication and so continued until run over and killed. This was a most pronounced case of continuing negligence, yet the court held that notwithstanding the negligence of the plaintiff, deceased, if the operators of the car could, by the exercise of care, have averted the injury after notice of the danger, the company was still liable. (5) The same doctrine is held by the supreme court in the following cases. Hanlon v. Railroad, 104 Mo. 389; Fiedler v. Railroad, 107 Mo. 645; Bunyan v. Railroad, 127 Mo. 19. And in the very recent case, Murphy v. Railroad, reported in the Southwest Reporter of January 15, 1900, p. 442. So we may safely claim that up to date the doctrine of our supreme court is as stated. The authorities on the question are exhaustively arrayed in the recent case of Klockenbrink v. Railroad, 81 Mo. App. 351. (6) Here the defendant introduced the ordinance in evidence, thereby asserting that it was binding and that all things necessary to make it so existed. Now the defendant, in direct conflict with the position in the trial court, asserts in substance that it was not binding because there was no evidence that defendant had agreed to obey the ordinance. This can not be allowed. Daniels v. Tearney, 102 U. S. 421; Davis v. Wakelee, 156 U. S. 689; Mosher v. Frost, 110 Ill. 209; Sheehan v. Sims, 36 Mo. App. 225. (7) The same principle as we contend for is applied by the courts, as to instructions. A party will not be heard to complain of instructions given at his request, or insist on a theory in conflict with what he asserted below. Jennings v. Railroad, 99

McAndrews v. St. L. & Sub. Ry. Co.

Mo. 399; Tetherow v. Railroad, 98 Mo. 85; Masten Bank v. Hammersburg, 72 Mo. 277; Clifton v. Sparks, 82 Mo. 119.

BOND, J.—Action for personal injuries to plaintiff and damage to his wagon and team, caused by a collision with a street railway operated in the city of St. Louis. The answer was a general denial, and a plea of contributory negligence. Plaintiff had judgment for $500. Defendant appealed.

Plaintiff was a teamster engaged in the business of hauling goods for merchants in the city. On the twenty-ninth of July, 1896, while so employed, he drove upon Wash street, one of the main thoroughfares of this city running east and west, whereon a double track was laid for the use of defendant. Plaintiff approached this street from the north and crossed its tracks so as to get on the south side. After driving some distance he observed ahead of him two wagons on the track; in proceeding he "swung partly on the track," so as to get by the wagons; he was moving at an average trot, and proceeded in an easterly direction, without hearing or knowing of the approach of any train from his rear. A collision took place, with reference to which he testifies as follows: "The first thing I remember of it was, after the car had struck the wagon I looked around suddenly to see what it was and saw the car there, and that was the last I knew, and I was dragged under the wagon along the street." Then follows a description of the injuries to himself and property, after which he adds: "Q. Now, as you moved down from Twenty-second street, tell the jury what signal you heard, if any; of any approaching car? A. I didn't hear any signal at all. The first signal I got was the car hitting the wagon. That was the first signal that I got. Q. Can you tell the jury or have you any memory of how far you were dragged? A. Well, no; not positively, I can't. But I remember about where I was pulled out from under the wagon. I suppose it

was some thirty or forty feet from where the car had struck the wagon. I do remember at the time when they went to pull me out of the wagon I asked them to wait a minute or two until I got breath. I wasn't hardly able to get out by assistance and they let me remain there a minute or two and then got me out. Q. What made you drag—did you have a hold of the reins. Did any part of the wagon go over you? A. One of the wheels passed over me."

Marius Dard testified for plaintiff as follows: "Q. Where were you at the time? A. I was looking out the basement window of the shop. Q. How far was the car from him, when you first saw the car? A. Well, when I first saw the car, looking out the window, I should judge the car was about thirty to forty feet—somewhere like that. Q. Which way was McAndrew driving at the time? A. East. Q. Where was he driving with reference to the track—how was he driving? A. He was part way into the track and part way on the south side of the track. Q. Were the wheels straddling the track? A. Yes, sir; a kind of avoiding two wagons. Q. What two wagons were they? A. A farmer's wagon there, tied to a telegraph post, and Mr. Wimer's wagon ahead of that, facing eastward. Q. The farmer's wagon was tied to the telegraph post—how far was that west of Wimer's store? A. I should judge ten or fifteen feet. Q. And where was Wimer's wagon? A. In front of his shop. Q. Now, when the collision occurred, where was the plaintiff's wagon? A. Well, it was just going down the track, and when it occurred it was almost opposite the basement window where I was. It struck the wagon and knocked his wagon in with Mr. Wimer's wagon. Q. When it struck his wagon and knocked it into Wimer's wagon, describe to the jury what occurred. A. When the wagon—when the car struck the wagon it knocked the front and hind wheel into Wimer's. With that the team fright-

ened and started off, and I ran out of the shop and tried to head them off on the south side of the street, and I couldn't do it there and I ran north and seen Mr. McAndrew holding on to the wagon, and I hallooed at him to hold on or he would get hurt; and at last I got a hold of the horse's head on the north side of the street, and I looked and saw McAndrew holding from the axle, and they unhitched the team and got him out, and Mr. Wimer called me to get ready and get out; and some young man hallooed there: 'I will take him home,' and they put McAndrew in and drove him off. I saw some firemen there and they hallooed." * * * "Q. Did you see or observe the motorman before the car struck the wagon? A. Well, no; I didn't exactly observe him, but I seen it was going down just the same as if there was nothing in front of him. Q. When you first saw the car, about how fast do you think it was running? A. I guess about seven or eight miles an hour— a gait of that much. Q. Do you know how far this man was dragged, about? A. Well, I should judge from where the wagons locked together, down about forty feet."

As to the distance within which defendant's car might have been stopped under the conditions existing at the place of the accident, one of its former motormen testified that a car so laden and traveling as the one which collided with plaintiff, might be stopped in thirty feet, by the use of brakes alone, and might be stopped in fifteen feet by reversing the power.

Appellant contends that upon the foregoing evidence the court should have directed a nonsuit. This view can not be sustained. The only negligence attributable to plaintiff is that he endeavored to pass wagons on a public street which obstructed his way, and that in the necessary use of the part of the street covered by the tracks of defendant, he went upon the same without looking or listening for the approach

of trains and that he continued to use this part of the street without looking for the approach of a train from his rear, up to the time of the accident. Conceding that this was negligence on the part of plaintiff, yet the testimony fairly supports the inference that he went upon the track of defendant at such a distance ahead of the car in his rear, that the motorman in charge of the car, by ordinary care, could have stopped the car, after he had discovered the plaintiff in a position of peril. This evidence presented an issue as to the proximate cause of the injury to plaintiff and the damage to his property, which he was entitled to have the jury pass upon. The principles of law upon which this rule is founded have been so recently discussed by us, that it is only necessary to refer to the cases for the reasoning sustaining our conclusions on this subject. We are fully satisfied with the justice and logic of the rule, and that a proper regard for the interests of society demands its enforcement without abating one "jot or tittle" of its vigor. Klockenbrink v. St. L. & Meramec R. R., 81 Mo. App. 351; O'Keefe v. St. L. & Suburban Ry. Co., 81 Mo. App. 386; Cooney v. Southern Electric Railway Company, 80 Mo. App. 226.

This disposes of all the assignments of error except one, which is, that though plaintiff pleaded, yet he did not prove that the city ordinance invoked by him was accepted by defendant. The record shows that plaintiff's attorney offered the entire ordinance in evidence, remarking that he would only read what applied to this case, to wit, the fourth subdivision of section 12. Defendant's attorney, as he had the right to do, requested the reading of another subdivision of the ordinance, whereupon plaintiff's attorney read both of the two subdivisions of the ordinance, but gave no evidence that defendant had accepted the ordinance in question. This was a fatal omission of proof. In a recent case the same ordinance was relied upon as a ground of negligence in an

action for personal injuries against a street railway, and was introduced in evidence without objection on the part of the defendant in that case. The supreme court decided that this was not enough to establish the acceptance of the ordinance by defendant, nor could such acceptance be legitimately inferred from the fact that the defendant operated its street railway over the streets of the city which had enacted the ordinance. Sanders v. Southern Electric Ry. Co., 147 Mo. 411. Under this ruling there was an essential omission of proof in the case at bar. The judgment is therefore reversed and the cause remanded. All concur.