STENZHORN *v.* CITY ELECTRIC RAILWAY CO.

1. STREET RAILWAYS—NEGLIGENCE IN OPERATION OF CARS—CONTRIBUTORY NEGLIGENCE.

A street sweeper working on a street car track, in the midst of a noise sufficient to deaden the sound of the gong of a car, is guilty of contributory negligence for placing reliance on his hearing only, and cannot recover for injuries sustained because of the motorman's failure to stop a car, which approached from the rear, running at ten miles an hour, and on which the gong was sounding.

2. SAME—CONTRIBUTORY NEGLIGENCE — DUTY TO PERSON GUILTY OF NEGLIGENCE.

In the operation of cars on the public street it is not negligence to assume that a person standing on the track will hear the usual signals, until it becomes apparent that he is paying no attention to them.

3. SAME—NEGLIGENCE IN OPERATION OF CARS.

> It is error to submit to the jury the question of defendant's negligence in backing the car off the injured street sweeper, dragging him back several feet, where the evidence showed that the car backed because the current had been reversed to avoid the collision.

4. EVIDENCE—HEARSAY—RES GESTÆ.

> Advice to the person operating the car, given after the accident, is inadmissible.

Error to Macomb; Law, J., presiding.   Submitted October 13, 1909.   (Docket No. 63.)   Decided December 10, 1909.

Case by Philip Stenzhorn against the City Electric Railway Company for personal injuries.   A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*P. H. Phillips*, for appellant.

*Fred B. Brown*, for appellee.

BLAIR, C. J.   Plaintiff, while engaged in the performance of his duties as a street sweeper in the employ of the city of Port Huron, was struck by one of defendant's east-bound cars and seriously injured.   At the time of the accident, about 10 o'clock in the forenoon, plaintiff was sweeping towards the east along the south rail of the track with his back towards, and directly in the path of, the approaching car from the west.   Plaintiff testified:

> "I was working on the track a few minutes just before the car struck me, and was facing the east.   I was sweeping the street.   I had been sweeping along the track about five or six minutes before the car struck me, and before that was on the street near the rail.   I walked right on the walk and started to sweep there, and, after I worked five or six minutes on the street and started to step towards the track, I looked to the west, but did not see any car approaching.   I didn't know the car was coming while I was working there.   I looked first, but didn't see any car

approaching. I did not hear any car, nor did I hear any gong. I had been working on the streets for five or six years sweeping, and before that I worked at the Upton Works. I always worked up to the time that I was injured, and earned $1.75 a day. My health was like oak before the injury, and my hearing was good. Before the accident, my hearing was very good, and up to that time, while working as a street sweeper, I could hear the bells of street cars. I could hear the sound of the gong if it had rung. I was 71 years of age on the 23d day of May; born in 1836."

Plaintiff was working on Lapeer avenue between Seventh and Eighth streets, which intersect the avenue at right angles, and at the time he was struck was about 80 feet west of the west line of Seventh street. Mr. Cruse, plaintiff's principal witness, testified that his attention was attracted to the car by the sound of the gong.

"The car was then between Eighth and Ninth streets. * * * I heard the gong ring at Eighth street. The car was then possibly 50 feet west of Eighth street. It was sounded three or four times—three or four quick taps. I didn't hear anything of the gong until the car was within a very few feet of Stenzhorn, possibly four feet. I have had experience on both electric and steam railways, and have had occasion to become familiar with the speed at which trains run. That car came down Lapeer avenue at least 10 miles an hour, and, after it struck Stenzhorn, went in the neighborhood of 40 feet. He was under the fender. The fender projects out over the rail. It would strike him on the calf of the leg from behind. She threw him under, and his head against the side of, the car on the south side. It jerked his feet under the fender until it came to the fender hanger. There is a bolt there, I think, with a split key. That split key caught his clothing, and made him fast there. The snow scraper in front of the wheels was directly behind his leg. When the car struck him, he fell to the pavement, his head fell out to the south, and the snow scraper, being behind him, kept him rolling along, his head bumping over the pavement. When the car stopped, it did not remain stationary, but was reversed and ran back, and he came back with it. He was still caught in the car with that split key. It jerked him back about 20 feet, when

his clothes tore loose from the split key and left him lying on the rail. His head was about one foot from the rail, and his body, legs, and feet were directly across the south rail. The car continued backwards after clearing Stenzhorn, about, possibly, 10 feet, but then came forward again, but did not strike him. It came so close that the fender was directly over his legs. When the car struck Stenzhorn, the motorman reversed his car. When the car struck Stenzhorn, I ran to his assistance. At the time the car struck Stenzhorn, the motorman had reversed his motor, but the car kept on in an easterly direction until the momentum of the car had ceased by the backward motion of the motor. He still kept the car backing, and, as soon as the car would come to a stop, she would reverse right back, and run back this way quick.   *   *   *   I was motorman on the electric line for about 2½ years. Going at the rate of 10 miles an hour as this car was going it should be stopped in about 40 feet. That is done by applying the brakes, and in case of emergency reversing the power on the car to back motion. Reversing the car has the effect of revolving the wheels on backward motion. It starts the wheels revolving in the opposite direction to what it would be going forward.   *   *   *   There were quite a few teams and a number of people on the street near the intersection of Lapeer avenue and Seventh street. The teams made considerable noise in going over the pavement.   *   *   *

"*Q.* Now, after you saw the car strike Mr. Stenzhorn, you say you ran toward him, you and Mr. McKinnon?

"*A.* Yes, sir.

"*Q.* What, if anything, did you say to the motorman? This was objected to by the defendant as immaterial and hearsay. (The objection was overruled, and defendant excepted.)

"*A.* As the motorman was approaching Stenzhorn the second time, I hollered to him, and asked him what he was trying to do—run over the man a second time? I also told him to put his reverse lever in the center of the controller, so that he couldn't use the power. If the lever was in the center, the current could not be turned on, and the car would have to remain stationary.   *   *   *   Well, when the motorman approached Eighth street, he sounded his gong. Mr. Stenzhorn was standing on the track on the south rail. There were also a number of teams and

foot passengers, fire department teams, hook and ladder wagon. I don't know what else you call it, maybe a hose wagon, and a number of people passing the street, and I knew this would be. * * * Mr. Stenzhorn at this time was on the south rail. One step of three feet sideways would have taken him out of the way of the car, and, if he had stepped the other way, it would have been directly in front of it."

The declaration alleges in each count, either directly or by reference, that the plaintiff "was in plain sight of the motorman of said car as it approached plaintiff, for a distance of, to wit, 1,000 feet;" and it is undisputed that the car was visible for several hundred feet. Each count in the declaration alleges that the defendant "wantonly, recklessly, and wilfully disregarded its duties" specified in the declaration, but also contains an averment that the plaintiff was in the exercise of due care, and "was without negligence with respect to the cause of his said injuries." The second count averred that, after the car struck plaintiff—

"It became and was then and there the duty of said defendant to immediately stop said car, and to give aid, assistance, and attention to plaintiff and to hold said car stationary, and to render assistance in extricating plaintiff from under the fender of said car. Yet the said defendant wantonly, recklessly, and wilfully disregarded its duty by continuing to run its said car forward a distance of, to wit, 100 feet, after said car had struck plaintiff and knocked him to the pavement, as aforesaid, dragging plaintiff for said distance along and over the rough pavement. Defendant further wantonly, recklessly, and wilfully disregarded its duties by not holding said car stationary after it had stopped running forward, as aforesaid, and by reversing said car and running the same backward a distance of, to wit, 100 feet, again dragging plaintiff for said distance along and over the rough pavement."

The circuit judge directed a verdict for defendant so far as responsibility for the original striking was concerned, but submitted the case to the jury upon the theory that the evidence tended to show negligence in handling the

car after plaintiff was struck, saying, among other things:

"I do not think the motorman by the exercise of ordinary care would have known when far enough away to have stopped his car that plaintiff was in a place of danger so long as, by a single step, plaintiff could have moved himself to a place of safety. · Hence I do not think there is any opportunity of applying the law which permits the plaintiff to recover notwithstanding his own contributory negligence. . And this is the theory set forth in the declaration, and the theory upon which this case has been tried, and the theory of the requests to charge which have been presented to the court. In this case the motorman was not running his car at any unusual rate of speed when the car passed over Eighth street moving to the east. And the motorman was justified in acting on the assumption that the plaintiff would step off the track and escape injury. Hence I do not consider the exact position of the plaintiff on the pavement or on the track or the fact as to whether or not the gong was rung after the car passed Eighth street, as controlling. The theory I have outlined is plaintiff's theory of the case. And I now direct you that he could not recover because he was struck, on this theory. And in so acting I rely on the Michigan case of *Lyons* v. *Railway Co.*, 115 Mich. 114 (73 N. W. 139), and the statement contained in *Kotila* v. *Railway Co.*, 134 Mich. 315 (96 N. W. 437).

"However, in the second count in plaintiff's declaration is found another and separate charge of negligence. It is charged that the defendant's motorman was negligent in backing the car after the plaintiff was struck, and after the car stopped. You will remember that the testimony of some of the witnesses shows that after plaintiff was struck, and after the car stopped, it backed; there being some difference in the testimony of the witnesses regarding how far the car backed up. After stopping the car, it was the duty of the defendant's motorman to do all he could do to prevent any further injury to plaintiff. If he failed to do all that a reasonably prudent man would have done under all the circumstances, taking into consideration the extremity, the probability of excitement, and all the surrounding conditions, the motorman may be charged with negligence for which the defendant is responsible. If he did all that a reasonably prudent man

would do under the circumstances, the railway company, defendant, cannot be charged with negligence by reason of any act of the. motorman. (To which the defendant excepted.)

"There is no foundation in the evidence for the charge of any wilful, wanton, or reckless act against the motorman in backing the car."

The jury found a verdict for plaintiff, and defendant has removed the record to this court for review.

Although the ruling in favor of defendant as to its responsibility for the original striking is not technically before us, the point is discussed in the briefs of counsel for both parties, and is so intimately connected with the second branch of the case that we deem it proper to consider it. Certain of plaintiff's witnesses testified that there was noise at the point in question which might interfere with hearing the car. His fellow sweeper, working about seven yards away, testified:

"Stenzhorn had been sweeping on the track about two or three minutes before he was hurt. I did not see the car before it struck him. I was minding my work, and was not watching the car. I can't swear that I heard the car coming.

"Q. Was there any gong sounded before it struck?

"A. No; I heard no bell ringing at all. My hearing is pretty good. I didn't hear any noise about there at the time. There was no sound or anything that would prevent me hearing a gong if one had been sounded. By all means I could hear a gong on a street car. * * * I was working along there doing my sweeping, and not paying any attention to the car. I didn't even know it was coming until it struck him. I never took any notice. The first thing that called my attention to the car was when I saw the fellows running towards Mr. Stenzhorn, and I did not know anything about the car before that."

Another of plaintiff's witnesses testified:

"After I first saw Mr. Stenzhorn, I heard no bell nor no gong. My hearing is good so that I can hear gongs on street cars when they are rung on the streets. I heard no noises sufficient to drown the sound of the gong if one had been rung. I heard no sound. I heard noth-

ing at all.   There was no unusual noise there at the time
that I took any notice of."

The conductor, the motorman, and the only passenger
on the car testified to the giving of warning signals.   As-
suming that the testimony of plaintiff's witnesses that
they heard no signals raised a question of fact for the
jury, we are of the opinion that the plaintiff was guilty of
contributory negligence in working upon the track in such
a position as to deprive him of the use of his vision, and
in relying solely upon his sense of hearing.   If there was
noise and confusion, as testified by some of his witnesses,
it was not prudent for him to rely solely upon his hearing.
If there was no noise to prevent his hearing and his hear-
ing was very good, as he testified, it is inconceivable that
he, working over the rail, should not have heard the ap-
proaching car, if he was listening for it.   There is no evi-
dence in this record that he was listening or was in the
habit of listening for approaching cars, although he testi-
fied:

"I cannot tell how often the cars run up and down La-
peer avenue.   I don't keep track of them.   I haven't time
when I am working.   I always watch the cars, watch
them so they wouldn't run over me and keep my eye on
them, but I can't tell how often they went back and forth.
I started to work that morning at 7 o'clock.   *   *   *   I
commenced to work on Lapeer avenue on the morning
that I was hurt at Eighth street and work west as far as
Fifteenth or Sixteenth street.   Then I went on Water
street and was there for some time, and then went on La-
peer avenue and worked east from Eighth street.   Cars
passed by me both on Lapeer avenue and Water street
while I was working there.   I don't know how often.   I
didn't notice it particularly."

The conclusion is irresistible from his testimony and
the surrounding facts and circumstances that, like his
fellow workman, his mind was wholly occupied with his
work, and he was not paying any attention to the car.
We are therefore of the opinion that the ruling of the cir-
cuit judge was correct on this branch, even if we assume

that the declaration did not admit the plaintiff's negligence and predicate a recovery upon the negligence of defendant after the discovery of plaintiff's negligence. In any phase of the case we think it is ruled upon this branch by the cases cited by the circuit judge. Considering the case on this branch as one involving a charge of ordinary negligence, a recovery is barred by plaintiff's contributory negligence. Considering that a recovery is sought for the negligence of defendant as the proximate cause of the accident after discovering plaintiff's precedent negligence, there was no evidence to sustain such recovery under the rule of *Daly* v. *Railway Co.*, 105 Mich. 193 (63 N. W. 73); *Lyons* v. *Railway Co.*, 115 Mich. 114 (73 N. W. 139).

Did the court err in submitting to the jury the question whether defendant's motorman was negligent in backing the car after the plaintiff was struck ? The answer to this question must depend, in our opinion, upon whether such backing of the car was due to a new act of the motorman after the stopping of the car and independent of the original attempts to stop the car and avoid the accident. The declaration charges an independent act of the motorman in wantonly, recklessly, and wilfully disregarding his duty "by not holding said car stationary after it had stopped running forward as aforesaid, and by reversing said car and running the same backward, etc." The proofs do not sustain this allegation of the declaration, but make it manifest that whatever negligent acts were committed by the motorman were committed in endeavoring to stop the car to avoid striking plaintiff. The car was reversed before striking plaintiff. It was not reversed after it had stopped. It was all one transaction, and cannot be split up into two separate branches. If defendant was guilty of any negligence in permitting the reverse action to continue in operation after the forward motion of the car was overcome, it was part of the original negligence and not an independent ground for recovery. The doctrine of discovered negligence does not apply to this branch of the

case under the declaration and proofs. *Labarge* v. *Railroad Co.*, 134 Mich. 139 (95 N. W. 1073); *Buxton* v. *Ainsworth*, 138 Mich. 532 (101 N. W. 817).

We are also of the opinion that the court erred in permitting Cruse to testify to what he said to the motorman after the injuries to plaintiff were complete.

Judgment reversed, and new trial granted.

Grant, Moore, McAlvay, and Brooke, JJ., concurred.