[No. 9055.  Department Two.  December 20, 1910.]

MICHAEL BUDMAN, *Appellant*, v. SEATTLE ELECTRIC
COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURIES TO SERVANT—WARNING—QUESTION
FOR JURY. There is a question for the jury, where a shoveler, struck
while working on a street car track, testified that no gong was
sounded giving him notice of the approach of a car, while the motor-
man and another witness testified that the gong was sounded.

SAME — CONTRIBUTORY NEGLIGENCE — EVIDENCE — SUFFICIENCY. A
common laborer at work shoveling gravel on a street car track is not
guilty of contributory negligence in not noticing the approach of a
street car, where no warning was given according to custom, and he
was on the track in the line of his duty and did not see or hear the
car.

SAME—CAUSE OF ACCIDENT—EVIDENCE—QUESTION FOR JURY. Where
a man has been forcibly knocked down by a street car, it cannot be
said, as a matter of law, that the position in which he was found
made it physically impossible that he was struck in any particular
way; the question being for the jury.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered April 25, 1910, in favor of the
defendant, notwithstanding the verdict of a jury rendered
in favor of the plaintiff, in an action for personal injuries
sustained by a track laborer struck by a street car.  Reversed.

*Jay C. Allen*, for appellant.

*James B. Howe* and *H. S. Elliott*, for respondent.

DUNBAR, J.—The Seattle Electric Company was operating
its cars in Seattle on a line that is known as the Wallingford
line.  Some gravel and sand had been thrown upon the track
where this accident occurred, for the purpose of repairing
or raising the ties.  The most of this gravel which had not
been used had been removed.  There was still a little left to
be removed, and the plaintiff was left by the foreman to re-
move it, when one of the cars traveling on that line struck

[1]Reported in 112 Pac. 356.

him, causing the injury for which he sues to recover. The case was tried to a jury, and resulted in a verdict in favor of the plaintiff, upon which defendant moved for judgment notwithstanding the verdict, which motion was sustained. Judgment was rendered accordingly, and from such judgment this appeal followed.

The plaintiff was a foreigner, fifty-nine years of age and a common laborer, and had been in the employ of the defendant company about a month. According to his testimony, he was working at the time on the track, and his work required him to be in a stooping position. While in such position, the car struck him without any notification of its approach. He testified that all the cars that had come down the track prior to the one that hurt him had rung a bell, thereby notifying him of their approach, but that this one did not; that it was a double track, and that there was another car that had just passed on the other track which he had noticed; that he did not hear the car approach which hurt him, and he had no notification in any way of its approach; that if he had been notified of the approach of the car, or had seen it, he would have run and escaped it.

The motorman testified that he saw the plaintiff approaching the track with his shovel when he was about two car lengths from him; that he threw off the current to let the car drift until he could see whether the plaintiff was going to cross the track; that when the plaintiff got within about three or four feet of the track, he stopped perfectly still, set his shovel down on the ground, with his right hand on the top of the handle of the shovel, and looked straight down at the ground; that he was ringing the gong at the time for the purpose of attracting his attention, and he supposed that the plaintiff knew that the car was coming; that he let the car coast right on up, and did not know anything more about it until he heard something which sounded as though something fell against the car "like it was a piece of wood." Then, he says he made an application of the air and stopped the

car, stepped over to the side of the window, and looked out, and saw the man lying down there in the street. So that it will be seen that as to whether notification was given by the sounding of the gong or ringing of the bell was a question upon which there was direct conflict of testimony. There was another witness who testified that he heard the motorman ringing the bell. The conductor on the train at the time, while not directly testifying that no gong was rung, impliedly testified so by stating that, when he heard this collision, he touched the bell for the purpose of notifying the motorman to stop the car, as he did not know that there was any effort to stop it.

The record, excluding that portion which treats of the character of the injury, is meager, and we have examined it with care, and have been forced to the conclusion that, on the question of the negligence of the motorman in running the car onto the appellant, the testimony is so conflicting that it should have been submitted to a jury. If respondent was negligent, it was because it failed to perform a legal duty in this case—a duty owing to the appellant by reason of their mutual relations, or by the doing of something which it should not have done. The respondent cites many cases to sustain its contention that the testimony shows negligence on the part of the appellant as a matter of law; among them *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488; *Dimuria v. Seattle Transfer Co.*, 50 Wash. 633, 97 Pac. 657; *Helliesen v. Seattle Electric Co.*, 56 Wash. 278, 105 Pac. 458, and *Mey v. Seattle Electric Co.*, 47 Wash. 497, 92 Pac. 283, all cases, of course, which were decided by this court.

The case of *Skinner v. Tacoma R. & P. Co.*, *supra*, decided that a person was guilty of contributory negligence as a matter of law when, on a dark night, he stepped in front of an approaching street car, ten feet away, with its headlight burning, and running near the speed limit, where he knew that the cars were accustomed to meet, and where the approaching car was in open view for a considerable distance.

In that case it will be observed that the controversy was between a pedestrian and the street car company; while, in the case at bar, it is between the street car company and an employee, who was ordered into the position which he occupied by the company, and who was in that particular place in the performance of his duty; an entirely different proposition from the case of a pedestrian who, as a matter of course, must exercise his own judgment in relation to dangers which may beset him when crossing the car lines. In *Mey v. Seattle Electric Co., supra*, we held that a pedestrian was guilty of contributory negligence precluding a recovery, where he walked on a street car track, in a city where cars were constantly passing, at a point where the sidewalk and a part of the street were fenced off or taken up with building operations, where there was room every few feet for him to get off the track to allow a car to pass, and he failed to keep on the lookout for cars coming up behind him. In that case it was said:

"It also appears from uncontradicted testimony that there was a passage, a portion of the way between the fencing which inclosed the sidewalk and the car line and where the debris was piled, that was wide enough to allow pedestrians to pursue their way and the street cars to pass without injuring them, and that a portion of the way there was not room; and that also at the point where the plaintiff was injured there was room between a carriage or hotel bus and the railroad track for a man to pass without being injured. This being true, it seems plain that it was the duty of the appellant, while traveling in close proximity to this track in a place where he testifies he knew that cars were passing at short intervals, to have exercised the ordinary caution of noticing, when he passed those points where there was not room for both man and car, whether there was any car which was liable to injure him."

We hardly see how the doctrine announced in this case, where the cars had no notification of the presence of a pedestrian on their track, where there was no duty owing to the

pedestrian excepting to travel within the time prescribed by the law, to keep the ordinary look out and to protect the pedestrian after he was discovered upon the track if possible, but where the duty was upon the pedestrian to keep off of the track at the place where he was injured and where he had an opportunity to keep off of it and still pursue his journey, can have any application to the facts of this case. The other two cases cited announced the same principles. In discussing the case of *Helliesen v. Seattle Electric Co., supra*, it was said:

"We cannot understand how one looking for a car can fail to see a lighted car with its headlight thrown on the track ahead of it, and only forty-two feet away."

In this case the testimony of the appellant was to the effect that he was not looking for the approach of this car, for the reason that the custom had been to notify him when the car approached; that if he had to be constantly looking out for the car, he would not have been able to do much work. In the fourth case, we decided that a pedestrian who was run down by a team at a street crossing was guilty of contributory negligence as a matter of law, where it appeared that he held an umbrella over his head in such a position as to prevent him seeing the approaching team, and where if he had looked around he could have seen the team. The case, it seems to us, is not in point under the circumstances shown in this case.

The case of *Quinn v. Boston Elevated R. Co.*, 188 Mass. 473, 74 N. E. 687, which, as is stated by the respondent in its brief, was quoted with approval by this court in the case of *Helliesen v. Seattle Electric Co., supra*, was where the plaintiff was not in the employ of the railway company at all, but in another employment, and was engaged in patching the floor of Harvard Bridge. He was stooping down and marking a plank, when the running board of the car struck him in the face. There is no showing in that case that there was any duty on the part of the railway company to notify him, or that there was any knowledge on its part that he would be at

the place where he was hurt when the train passed such place. In closing the opinion of that case, the court said:

"On the uncontradicted evidence, we are of opinion that the judge was right in directing a verdict for the defendant. The plaintiff was working in a dangerous place, and was looking out for himself. He knew the danger of being too near the rail, for he testified that he was struck by a car near the same place five years before."

*Eddy v. Cedar Rapids & M. C. R. Co.,* 98 Iowa 626, 67 N. W. 676, was a case where plaintiff was working on a street, and he had placed a plank on the top of some crossing sleepers to level them, when he pushed one out so far that the car knocked the plank against him and injured him. But even in that case the judgment was reversed on account of errors in the instructions given by the court in taking away from the jury questions which ought to have been submitted to them. The court, speaking of the instruction, said:

"There is no ground upon which this instruction can be sustained. It was a question of fact for the jury to determine, whether, under all the evidence, the motorman was negligent in not giving the signal, if it was found he failed to do so."

But, in any event, the plaintiff in that case had no relations with the railway company, and they had nothing more than the ordinary duties to perform towards each other. The case of *Stenzhorn v. City Electric R. C.,* 159 Mich. 82, 123 N. W. 621, was where a street sweeper was injured and, for the reasons announced in the other case, it was held that it was his duty, as a matter of law, to notice when he got close enough to the track to be in danger. And so with all the other cases cited.

In the early case of *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799, where the question of contributory negligence had been taken from the jury and decided by the court, this court said, speaking through Judge Anders:

"Generally, the question of contributory negligence is for the jury to determine from all the facts and circumstances of

the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury;" citing very many cases to sustain the announcement. It further said:

"There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law, but we think the case in hand does not fall within either of them. The first is where the circumstances of the cases are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. . . . And the second is where the facts are undisputed, and but one reasonable inference can be drawn from them;" citing Cooley on Torts, p. 670, and 2 Thompson on Negligence, § 1236.

These principles of law have been adhered to by this court since their announcement in that case, and were reaffirmed, especially in the case of *Burian v. Seattle Electric Co.*, 26 Wash. 606, 67 Pac. 214, where it was held that, in an action to recover for damages resulting from being run down by a cable car, where there was some evidence that no gong was rung, it was error to nonsuit plaintiff, since it became the duty of the jury to determine what the fact was as to sounding the gong, and whether a failure to sound it constituted negligence under all the facts of the case. There it was said:

"Under our system of jurisprudence the jury is constituted the functionary which must pass upon these questions of fact. It is not a question of what may be our individual opinions as to the facts shown by the record. The law casts that duty upon the jury as a distinct and auxiliary branch of the court, and unless the evidence shows negligence on the part of appellant as a matter of law, it is his right to have the facts submitted to a jury. This court has held that generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and that it is only in rare cases that the court is justified in withdrawing it from the jury."

In this case the testimony was conflicting. The plaintiff was at his post of duty on the track, and if the jury believed

his testimony and not the testimony of the defendant in relation to a notice which was or was not given him, they would be justified in deciding that the motorman was guilty of negligence. We are not prepared to say from the testimony of the motorman alone that the jury would not have been justified in concluding that the motorman had wilfully committed this injury upon the plaintiff after having been notified of his presence on the track. It will be conceded, of course, that he had no right to run the plaintiff down even though he were guilty of contributory negligence in being upon the track where he had no business to be. It is true that a very alert and intelligent man might not have been willing to rely upon the notice which the plaintiff claims that he was to receive by the ringing of the bell and the sounding of the gong when the car approached; but it is a matter of common knowledge that men possessing the brightest and most alert minds, or even minds of ordinary alertness, are not found in employments of this kind, and they must be tested with reference to the character of mind possessed by men engaged in such employment.

There is also a claim that the position in which the plaintiff was found after he was knocked down shows that it was physically impossible for him to have been struck by the car in the manner in which he says he was struck. But the question of whether it was a physical impossibility under all the circumstances was a question to be determined by the jury. The facts being admitted, it is for the court, of course, to determine whether the acts shown constituted contributory negligence. But they were not admitted in this case, and were the subject of the controversy. It might be possible for a case to be presented where the facts would show conclusively that the claim of an individual was a physical impossibility. But such cases are rare, and where an accident has occurred that nobody was an eyewitness to, the mere fact that a man is found lying in a certain position is not conclusive that he was not struck in any particular way. When forcibly struck, the body

of a man is liable to be thrown or hurled or twisted so that he might alight in almost any conceivable shape; and in this case we think it was plainly for the jury to determine whether the claim of the plaintiff was physically impossible. For this reason, we think the court erred in granting the motion for judgment notwithstanding the verdict.

The judgment will be reversed, and the case remanded with instructions to pass upon the motion for a new trial, on grounds other than the ones discussed in this opinion; and, if said motion is denied, to enter judgment in accordance with the verdict.

RUDKIN, C. J., and CROW, J., concur.