[No. 14055.    Department Two.    March 2, 1918.]

D. W. LOCKE, *Respondent,* v. PUGET SOUND
INTERNATIONAL RAILWAY & POWER COMPANY
*et al., Appellants.*[1]

STREET RAILROADS—COLLISION—NEGLIGENCE—LAST CLEAR CHANCE
—QUESTION FOR JURY. Where a motorman, before starting his car,
saw plaintiff start diagonally across the track, and saw that he
paid no heed to continual ringing of the gong, whether he had no-
tice of his peril in time to avoid the injury, notwithstanding con-
tributory negligence, was a question for the jury on the theory of
the "last clear chance."

Appeal from a judgment of the superior court for
Snohomish county, Smith, J., entered December 14,
1916, upon the verdict of a jury rendered in favor of

[1]Reported in 171 Pac. 242.

the plaintiff, in an action for personal injuries sustained in a collision with a street car. Affirmed.

*Cooley, Horan & Mulvihill,* for appellants.
*Black & Black* and *E. C. Dailey,* for respondent.

CHADWICK, J.—At about four o'clock on the afternoon of the 27th day of March, 1915, respondent was struck by a car operated by appellant on the streets of Everett. The accident occurred on Colby avenue, a principal thoroughfare running north and south. Colby avenue intersects Hewitt avenue, the principal business street in the city. The Colby avenue cars have their southern terminus at Hewitt avenue. The first street north of Hewitt avenue is California street. From California street north to the place of the accident the grade is practically level. On the day mentioned, respondent, who is lame and quite hard of hearing, had gone to the office of Doctor Hathaway, on the west side of Colby avenue. He left his vehicle, a tricycle, in front of the doctor's residence. After his errand had been performed, he mounted his tricycle, and, after looking to the south and seeing no car approaching and no vehicles other than some automobiles, he started diagonally across Colby avenue, intending to put himself on the east side of the car tracks, or on the right-hand side of the street.

The jury could have found that the car started from Hewitt avenue north on Colby street at about the time respondent left the curb in front of the doctor's office. The motorman testified that he saw respondent leave the curb in front of the doctor's office when he started the car at California street. The street car was stopped at California street to take on a passenger. The motorman sounded his gong as he started the car. As the car moved north, he appreciated the

fact that respondent was intent upon crossing the track. He sounded his gong almost continuously up to the time respondent was struck. The accident occurred approximately one hundred and sixty-five feet north of California street. Respondent's tricycle was struck by the left-hand corner of the car. The car was stopped by setting the brakes hard, in a distance probably equal to, or little more than, its length, although the jury would have been justified in finding a greater distance.

The assignments of error all go to the legal sufficiency of the evidence to sustain the verdict, it being appellant's contention that respondent was so regardless of his own safety that he is to be charged with contributory negligence, as a matter of law; and although appellant may have been negligent, the negligence of respondent was concurring and continuing up to the time of the accident. Appellant admits that respondent suffered from a certain degree of deafness, but contends that there is no evidence that the motorman knew of his infirmity. The position of appellant is that there was no duty on the part of the motorman to take care of respondent's safety until respondent actually came into the zone of danger, which is fixed as the car track, or so near the car track that the car would strike any object in its way. This contention is based upon the assumption that there was a primary duty on the part of respondent, knowing of the existence of the car track and the possibility of cars approaching at any time, to take account of his own safety to the extent of looking before putting himself in a position where he might be injured.

The facts in this case are such that appellant cannot avail himself of the principles relied on. The duty of the motorman began at the very moment that he saw respondent moving into a situation of peril. That

moment is fixed by his own testimony when he was starting the car at California street, or, in other words, the duty of the motorman began at the time he began to perform it. He sounded his gong from the time he saw respondent until the car struck him. Whether the mere ringing of the gong, which it is conceded did not attract respondent's attention, was a sufficient performance of duty under all the facts was a question for the jury.

In *Beeman v. Puget Sound Traction, Light & Power Co.*, 79 Wash. 137, 139 Pac. 1087, speaking of the duty of a motorman on a street car—and it will be borne in mind that the duties of the traveler and the motorman are reciprocal—we quoted from *Johnson v. Washington Water Power Co.*, 73 Wash. 616, 132 Pac. 392:

"A motorman has the right to assume that a person on the street will exercise such care to avoid injury, and he may lawfully act on that assumption, until the conduct of the person warns him to the contrary."

But the continued movement of a person toward a place of danger, after a warning sound, is notice that he is unaware of his peril and is enough to break the reciprocal balance of duty, and, if it can be said that he had the time to do so, puts upon the motorman the positive duty of avoiding an accident.

In *Budman v. Seattle Elec. Co.*, 61 Wash. 281, 112 Pac. 356, the motorman saw the plaintiff approaching the train when distant about two car lengths. He let the car drift, and rang his gong in time to warn plaintiff. He supposed plaintiff knew the car was coming. The evidence did not show that the plaintiff actually knew of the existence of the car. A verdict of the jury that this did not meet the measure of the company's duty was sustained. So in *Tecker v. Seattle, Renton & Southern R. Co.*, 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912B 842:

"The motorman testified that, when he first observed the boy, he was fifteen feet from the track, and in a place of safety, 'if he had stopped'; that he kept ringing the gong, but that the boy 'kept going right along' and that the boy 'was about fifteen feet of the car, running across through the street over the crossing.' "

We said:

"If, by the exercise of proper vigilance, the motorman could have seen the child in time to stop the car and avoid striking him, it was his duty to do so; and if, when he saw the boy, his conduct indicated that he was intending to cross the track, and that he had not seen the car or heard the signals, if any were given, it was the duty of the motorman to use every effort to stop the car."

In each of these cases, the court noticed that the collateral facts of age and mental alertness were proper items to be considered by the jury. In the case at bar, respondent's infirmity was a probative fact when considered in the light of all the evidence. We think the case falls naturally within the doctrine of the last clear chance, notwithstanding counsel's contention "that, if the negligence of the appellant was merely concurrent with that of respondent, and that respondent's negligence continued up to the time of the accident and was concurrent with that of the appellant, the doctrine of last clear chance has no application."

Much of the confusion attending the doctrine of the last clear chance has come from a seeming belief on the part of many judges and text writers that it is in itself a principle of law and subject to arbitrary definition, whereas, it is no more than a judicial exception to established principles, resting in fact and not in law. The chance to avoid an injury is a relative question, to be resolved solely by reference to the facts of each particular case. If the one party knows of the peril of the

other, although brought about by that other's negligence, in time to avoid injuring him, he is at once put to a degree of care commensurate with the present situation of the parties.

The doctrine of last clear chance does not abrogate any of the rules of proximate cause; it rather affirms them. It is a rule of convenience as well as necessity, to which the courts have resorted in all proper cases where contributory negligence is plead as a defense and a jury is called upon to find the proximate cause. The rule, as we understand it to be, is laid down in Nellis on Street Railways (2d ed.), § 462:

"Contributory negligence of a party injured will not defeat his action, if the defendant or its servants might by reasonable care and prudence have discovered his peril in time to save him, and thus have avoided the consequences of the injured party's negligence. In such a case the plaintiff's alleged contributory negligence could not be said to be the direct and proximate cause of the accident, but the defendant's negligence would be the proximate cause and would thus render it liable."

The argument of counsel is not unlike that made in the case of *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, where it is said:

"The appellant cites certain authorities, most of them railroad or street car cases, and some of them cases arising on injuries to trespassers on railroad tracks, to sustain the contention that in no case can a plaintiff recover where his negligence continues up to the time of the injury. The authorities cited hardly bear that construction. . . . At any rate, this court has held, in accordance with many courts and with what we conceive to be the more logical as well as the more humane rule, that where the peril of a traveler on the highway is actually discovered and should be appreciated by the operator of a street car, or other agency of danger, there arises a new duty to exercise all reasonable care to avoid injury, and the failure to

exercise such care, if it results in injury, will render a defendant liable notwithstanding the continuance of the plaintiff's negligence up to the instant of injury. *O'Brien v. Washington Water Power Co.*, 71 Wash. 688, 129 Pac. 391; *Dyerson v. Union Pac. R. Co.*, 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132; *Brugger-man v. Illinois Cent. R. Co.*, 147 Iowa 187, 123 N. W. 1007.''

A fair statement of the law is to be found in *Galla-gher v. Manchester St. R.*, 70 N. H. 212, 47 Atl. 610:

''If due care on the part of either at the time of the injury would prevent it, the antecedent negligence of one or both parties is immaterial, except it may be as one of the circumstances by which the requisite meas-ure of care is to be determined.''

In that case the motorman ''might have stopped the car sooner than he did.''

*Bedell v. Detroit, Y. & A. A. R.*, 131 Mich. 668, 92 N. W. 349, is a case somewhat similar to the case at bar. The plaintiff was afflicted with deafness, as is respond-ent. The court said:

''The only question which can fairly be made upon this record is whether the facts justified the submission of the question to the jury in the form adopted by the circuit judge. It is contended by the defendant that the evidence shows that the decedent was signalled by his companions, and warned of the danger. This is doubt-less true, but it is also apparent that the decedent did not understand the signals given, and there was testi-mony from which the jury might have inferred that the motorman observed that these signals were not be-ing understood or observed by decedent.

''The defendant also contends that the case is one like *Fritz v. Railway Company*, 105 Mich. 50 (62 N. W. 1007), namely, an attempt to cross the track, unex-pected and sudden. But the present case differs from that in this: That for a considerable distance the de-cedent while pursuing his way on his bicycle, ahead of and in the same direction in which the electric car was

going, was near enough to the track to be in a place of danger; and this within the observation of the motorman. There was testimony, therefore, bringing the case within the rule of the cases first above cited, and, as the only error relied upon is the refusal of the circuit court to direct a verdict for the defendant, the judgment will be affirmed.''

In *McAndrews v. St. Louis & Suburban R. Co.*, 83 Mo. App. 233, the court held:

''The only negligence attributable to plaintiff is that he endeavored to pass wagons on a public street which obstructed his way, and that in the necessary use of the part of the street covered by the tracks of defendant, he went upon the same without looking or listening for the approach of trains and that he continued to use this part of the street without looking for the approach of a train from his rear, up to the time of the accident. Conceding that this was negligence on the part of the plaintiff, yet the testimony fairly supports the inference that he went upon the track of defendant at such a distance ahead of the car in his rear, that the motorman in charge of the car, by ordinary care, could have stopped the car, after he had discovered the plaintiff in a position of peril. This evidence presented an issue as to the proximate cause of the injury to plaintiff and the damage to his property, which he was entitled to have the jury pass upon.''

*Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51; *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458; and *Dimuria v. Seattle Transfer Co.*, 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471, are readily distinguished upon the facts. In none of these cases was the peril of the pedestrian apparent for an appreciable time before the accident, nor did it continue long enough after discovery to put the driver upon either actual or implied notice of the danger in time to have avoided the injury. Under a somewhat similar state of facts, we held that these cases would

not control. *Ludwigs v. Dumas*, 72 Wash. 68, 129 Pac. 903:

"He was in plain view of the defendant, and apparently crossing the course which defendant desired to take at that time. Whether he should have seen the defendant and avoided the automobile, or whether the defendant should have seen the plaintiff and avoided him, were, we think, questions for the jury."

*Scharf v. Spokane & Inland Empire R. Co.*, 92 Wash. 561, 159 Pac. 797, is also relied upon. That case was properly decided upon the theory that the one injured was a mere licensee or trespasser to whom the defendant company owed no duty other than to avoid a wanton or wilful injury. It will be observed that the opinion of the court does not rest entirely upon the continuing negligence of the decedent, but the knowledge of the respondent is considered as of equal weight.

Our attention is called to the case of *Bullis v. Ball*, 98 Wash. 342, 167 Pac. 942. That case has no bearing upon the case at bar. The court there held that the doctrine of the last clear chance was not applicable to the facts; but if it were so, the court had instructed upon the only phase of the doctrine that could have even a remote bearing, and inasmuch as appellant had not excepted to the instruction of the court, he was in no position to urge it as error. In the last analysis, the case of *Bullis v. Ball* was little more than a race for the crossing, a condition out of which no right of action could possibly arise.

In the instant case, respondent was in the rightful use of the street. His persistence in crossing, after timely warning had been given, was enough to put the motorman on notice that he was not in full possession of his faculties of seeing and hearing. When the motorman saw respondent and rang the gong, he had the

right to assume that respondent would look out for his own safety to the extent of stopping, or clearing the track if upon it. But when respondent did not heed the warning, the motorman, having time, was in duty bound to protect him.

In *Johnson v. Washington Water Power Co.*, 73 Wash. 616, 132 Pac. 392, the injured party was aware of the approaching car. His duty was equal, if not greater, than that of the motorman, for knowing the situation, he could have kept his way or turned off the track and avoided the accident. His negligence was clearly the proximate cause.

It is charged that the affirmance of this case will indorse the doctrine of comparative negligence—a doctrine which this court has persistently rejected. There are cases somewhat similar where a recovery has been denied under the doctrine of comparative negligence, but this court, whether for sound or unsound reasons, has rejected these and like cases. In the *Mosso* case, the court assumed to divide the doctrine of the last clear chance, the first element being,

". . . assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, then, as we have seen, whenever the person in control of such agency actually sees the traveler's situation and should appreciate his danger, the last chance rule applies, without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury."

If this be an adoption of the doctrine of comparative negligence, and it be vicious, the court has erred in declaring what it has conceived to be "the more logical as well as the more humane rule," and a majority of the judges have sustained it against repeated assaults.

Whether appellants had notice of the peril of respondent and had time to avoid injuring him, notwith-

standing his contributory negligence, was a question for the jury.

The judgment is affirmed.

ELLIS, C. J., MOUNT, MORRIS, and HOLCOMB, JJ., concur.