[No. 9219. Department One. April 10, 1911.]

GEORGE D. WILLIAMS et al., Respondents, v. NORTHERN PACIFIC RAILWAY COMPANY, Appellant.[1]

RAILROADS—CROSSINGS—FLYING SWITCH IN CITY—NEGLIGENCE—QUESTION FOR JURY. The negligence of a railway company in making a flying switch, in a city, is a question for the jury, where the switched cars were on a down grade on a spur track running nearly parallel to a sidewalk until it crossed the walk at an angle, there was considerable noise in the vicinity preventing a person from hearing a warning shout, and control of the cars by hand brakes was more than ordinarily difficult.

SAME—CONTRIBUTORY NEGLIGENCE. A girl, fourteen years of age, who was run down on a city crossing by cars on a spur track, started down grade on a flying switch, is not guilty of contributory negli-

[1]Reported in 114 Pac. 888.

gence as a matter of law from the fact that she did not look back after she was within ten or twelve feet from the crossing when the cars were sixty feet away approaching from the rear.

Appeal from a judgment of the superior court for Whitman county, Canfield, J., entered June 24, 1910, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Affirmed.

*Edward J. Cannon, George M. Ferris, Charles E. Swan,* and *Thomas A. E. Lally,* for appellant.

*Robertson & Miller* and *Harry Rosenhaupt,* for respondents.

PARKER, J.—This is an action for damages, alleged by the plaintiffs to have resulted to them from the negligence of the defendant in switching cars upon its tracks at Pullman on October 29, 1906, thereby causing the death of their daughter. The defendant denied the negligence charged against it, and as a defense charged contributory negligence on the part of the daughter. The trial resulted in a verdict and judgment in the plaintiffs' favor. The defendant has appealed.

There is here involved only the alleged error of the trial court in denying appellant's motion for a directed verdict, and for judgment notwithstanding the verdict. The problem for our solution is, Can the cause be decided as a matter of law in appellant's favor upon the question of its negligence, or upon the question of the daughter's contributory negligence?

The appellant owns and operates a line of railway running north and south through Pullman. Grand street in Pullman adjoins the railway on the west. The sidewalk on the west side of the street runs almost parallel with the railway. There is a spur track turning off from the main line which runs across the street in a southwesterly direction to some warehouses located some distance west of the street. From the point where the spur leaves the main line to the sidewalk

on the west side of the street, the distance is about 65 feet, and from the point where the spur crosses the sidewalk on the west side of the street to the main line of the railway, the distance is about thirty-nine feet. There is nothing to obstruct the view at any point between the sidewalk and the main line of the railway along this part of the street. From the point where the spur leaves the main line, measured along its course to where it crosses the sidewalk on the west side of the street, the distance is about 190 feet. The spur crosses the sidewalk in a southwesterly direction at an angle of less than forty-five degrees, though the larger part of the spur between that point and the main line is much nearer parallel to the sidewalk than that angle would indicate. So if a person was walking south on the sidewalk and near to the crossing, and a car or train was approaching the crossing over the spur, it would, in a sense, be approaching such person from the rear, unless it was as near or nearer to the crossing than the person. From the point where the spur leaves the main line of the sidewalk crossing, its grade descends at an average rate of about one and one-half per cent.

About half past 8 o'clock on the morning of October 29, 1906, the daughter of respondents, who was then but little past fourteen years of age, was walking south on the sidewalk on the west side of the street on her way to school. She was apparently somewhat absorbed in reading a book. Just as she reached the crossing of the spur track, two cars, without any engine attached, which had been switched off the main line, approached from that direction at a speed of six or eight miles an hour, and ran over her, resulting in her death. This spur was used by appellant on an average of about once a day, or possibly a little oftener during the fall months, and at other times of the year it was used much less. The daughter had been passing over this sidewalk and over this crossing daily on her way to and from school for several months. At the time of the accident, these cars had been switched off the main line onto the spur by a flying switch.

The engine pulling the cars and running from the north to south upon the main line was detached just before reaching the switch, when its speed was accelerated, carrying it over the switch, and the switch then turned allowing the cars to pass onto the spur. At this point the speed of the cars was about four or five miles per hour, and their speed was increased by the down grade of the spur so as to become six or eight miles per hour at the crossing.

There is some conflict in the evidence as to whether there were two or three cars, and as to where the brakeman was standing on top of them. But we will assume that there were only two cars, and that the brakeman was very near the front end on top of the first car, as claimed by appellant. The brake of the front car was at the rear end, so the brakeman was not near it. No other person was on either car. There was another engine besides the one which had made the switch, near there, and there was some noise going on, such as is usual in such places. Just what notice the daughter had taken of her surroundings while approaching the crossing and before she got near to it, is not shown. The jury was asked, and answered, a special interrogatory as follows: "Q. Did she look in the direction from which the cars were approaching before stepping upon the spur track? A. No." The brakeman on the front car first noticed her when she was about ten or twelve feet from the crossing, and seeing she was apparently absorbed in her book, and about to go upon the track, he halloed, "Look out." The cars were then about sixty feet from the crossing. About this time another person over on the main line halloed in a similar manner. She paid no attention to these warnings, seeming not to hear them, or if she did, seeming not to understand they were warnings to her. By this time the cars had approached to within about thirty feet, when the brakeman ran to the brake at the rear end of the car, and did not see her again until after she had been run over. She noticed the approach of the car when she had gotten upon the track, and tried to escape, but it was

then too late.  The front end of the front car passed about
100 feet beyond the crossing before it could be stopped by the
brakeman.  It appears from the evidence to be somewhat
doubtful as to whether or not the cars could have been
stopped by the brakeman before reaching the crossing, even
had he commenced to do so immediately after leaving the
switch, because of the down grade.  There was some evidence
tending to show the experience and intelligence of the daugh-
ter, but we do not regard that she was thereby shown to be
a girl of materially different experience or intelligence from
other children of her age.

Referring first to the negligence of appellant, we think
these facts are clearly sufficient to require the submission of
the question of its negligence to the jury, and that such ques-
tion could not be decided in appellant's favor as a matter of
law.  The undisputed evidence not only shows that the flying
switch was made by appellant's servants, but that it was made
by throwing cars upon a spur running down grade where
their control by the hand brakes alone was rendered more than
ordinarily difficult.  This was clearly sufficient to establish
the negligence of appellant.  *Kentucky Central R. Co. v.
Smith*, 93 Ky. 449, 20 S. W. 392, 18 L. R. A. 63, and note.

The principal contention of learned counsel for appellant
is that the daughter was guilty of contributory negligence,
and that the court can so decide upon this record as a matter
of law.  We have seen that the daughter was but little over
fourteen years old.  There is no evidence that she did not
look and listen, except that she did not do so after she had
gotten from ten to twelve feet from the crossing.  The spe-
cial finding cannot mean more than this.  She may have done
so before that and become satisfied that there was no danger
to be apprehended from cars upon the spur.  If she had
looked back but a moment before that time and even saw the
cars some distance back upon the switch without any engine
attached to them she might have mistakenly supposed they
were upon the main line.  Even when she was twelve feet

from the crossing the cars were sixty feet away. They approached her practically from the rear on a down grade at increasing speed with no engine attached to assist in controlling them, or to give the usual warning by bell or whistle as they approached the crossing. It seems to us, in view of all of these facts, reasonable minds might differ as to whether or not she acted as prudently under the circumstances as a girl of her age, intelligence and experience would ordinarily act under such circumstances. This, we think, renders the question of her contributory negligence one for the jury, and it cannot be decided as a matter of law. *Boyer v. Northern Pac. Coal Co.*, 27 Wash. 707, 68 Pac. 348; *Steele v. Northern Pac. R. Co.*, 21 Wash. 287, 57 Pac. 820; *Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 31 L. R. A. 855; *Alabama & Vicksburg R. Co. v. Summers*, 68 Miss. 566, 10 South. 63.

The judgment is affirmed.

DUNBAR, C. J., MOUNT, and FULLERTON, JJ., concur.