[No. 10038. Department One. March 13, 1912.]

## LEE RICHMOND, *Respondent*, v. TACOMA RAILWAY & POWER COMPANY *et al.*, *Appellants*.[1]

STREET RAILROADS—NEGLIGENCE—INJURY TO PEDESTRIAN — QUESTION FOR JURY. The question of the negligence of a street car company, in running down a pedestrian at a street crossing, is for the jury, where it appears that the car passed another standing car taking on passengers at a crossing, traveling at a speed of 25 or 30 miles an hour, the speed limit being 20 miles an hour, that no effort was made to reduce speed until opposite the standing car, in violation of rules of the company, and that the car struck plaintiff on the far crossing after going 51 feet, and traveled 150 feet before it was stopped.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of a pedestrian, running across street car tracks on the west side of a street crossing, to catch a waiting car on the tracks on the east side of the street, is for the jury, where plaintiff looked when 45 feet from the track, where he had a view for 200 feet, and saw no street car approaching, but was struck while crossing by a car exceeding the speed limit and traveling 25 or 30 miles an hour; since he need not stop to look and listen; contributory negligence involving affirmative proof of the fact, which is more than a mere failure of required affirmative proof.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. It is harmless error to give an instruction as to plaintiff's right to recover, although negligent, if the defendant had the last clear chance to avoid the accident, there being no evidence warranting its submission, where the jury by a special verdict found that the plaintiff was not guilty of contributory negligence.

STREET RAILROADS—NEGLIGENCE—INJURY TO PEDESTRIAN — VIOLATION OF SPEED ORDINANCE—INSTRUCTIONS. A pedestrian, struck by a car exceeding the speed limit, is presumed to know the local laws and is therefore entitled to an instruction that he had a right to assume that street cars would not exceed the speed limit in passing the crossing, although there was no evidence that he knew of the ordinance limiting the speed.

SAME. An instruction that plaintiff, struck by a street car at a crossing, had a right to assume that the car would not exceed the speed limit, is not objectionable as relieving the plaintiff from the

[1]Reported in 122 Pac. 351.

charge of contributory negligence, where it plainly stated that, yet if such limit was exceeded, he would not be relieved of the obligation to exercise due care.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered June 9, 1911, upon the verdict of a jury, rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by a street car. Affirmed.

*John A. Shackleford* and *F. D. Oakley,* for appellants, contended, *inter alia,* that this court has in many cases held that a person is guilty of contributory negligence (a) where, before going upon street car tracks, he fails to exercise his senses to discover the approach of a car; (b) where he so carelessly looks or listens that he does not see an approaching car plainly visible for some distance; and (c) where he looks only when some distance from the tracks and does not again look before attempting to cross the track. *Christensen v. Union Trunk Line,* 6 Wash. 75, 32 Pac. 1018; *Helber v. Spokane St. R. Co.,* 22 Wash. 319, 61 Pac. 40; *Criss v. Seattle Elec. Co.,* 38 Wash. 320, 80 Pac. 525; *Coats v. Seattle Elec. Co.,* 39 Wash. 386, 81 Pac. 830; *Davis v. Coeur d'Alene & Spokane R. Co.,* 47 Wash. 301, 91 Pac. 839; *Mey v. Seattle Elec. Co.,* 47 Wash. 497, 92 Pac. 283; *Skinner v. Tacoma R. & Power Co.,* 46 Wash. 122, 89 Pac. 488; *Helliesen v. Seattle Elec. Co.,* 56 Wash. 278, 105 Pac. 458; *Borg v. Spokane Toilet Supply Co.,* 50 Wash. 204, 96 Pac. 1037, 19 L. R. A. (N. S.) 160; *Dimuria v. Seattle Transfer Co.,* 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471; *Fluhart v. Seattle Elec. Co.,* 65 Wash. 291, 118 Pac. 51. The great weight of authority sustains the rule that a pedestrian is guilty of contributory negligence if, before crossing street car tracks, he fails to exercise his senses to discover the approach of cars operated by electricity. *Birmingham R., L. & P. Co. v. Oldham,* 141 Ala. 195, 37 South. 452; *McGee v. Consolidated St. R. Co.,* 102 Mich. 107, 60 N. W. 293,

47 Am. St. 507, 26 L. R. A. 300; *Wider v. Detroit United R.*, 147 Mich. 537, 111 N. W. 100; *Hickey v. St. Paul City R. Co.*, 60 Minn. 119, 61 N. W. 893; *Terien v. St. Paul City R. Co.*, 70 Minn. 532, 73 N. W. 412; *Timler v. Philadelphia Rapid Transit Co.*, 214 Pa. 475, 63 Atl. 824; *Manos v. Detroit United R. Co.* (Mich.), 130 N. W. 664; *McGee v. St. Joseph R. etc. Co.*, 153 Mo. App. 492, 133 S. W. 1194; *McCabe v. International R. Co.*, 143 App. Div. 710, 128 N. Y. Supp. 285; *Riedel v. Wheeling Traction Co.*, 63 W. Va. 522, 61 S. E. 821, 16 L. R. A. (N. S.) 1123; *Cain v. Macon Consol. St. R. Co.*, 97 Ga. 298, 22 S. E. 918; *Indianapolis St. R. Co. v. Zaring*, 33 Ind. App. 297, 71 N. E. 270, 501; *Young v. Citizens' St. R. Co.*, 148 Ind. 54, 44 N. E. 927, 47 N. E. 142; *Beem v. Tama & T. Elec. R. & L. Co.*, 104 Iowa 563, 73 N. W. 1045; *Ames v. Waterloo & C. F. Rapid Transit Co.*, 120 Iowa 640, 95 N. W. 161; *Burns v. Metropolitan St. R. Co.*, 66 Kan. 188, 71 Pac. 244; *Kansas City-Leavenworth R. Co. v. Gallagher*, 68 Kan. 424, 75 Pac. 469, 64 L. R. A. 344; *Heebe v. New Orleans & C. R. L. & P. Co.*, 110 La. 970, 35 South. 251; *Snider v. New Orleans & C. R. Co.*, 48 La. Ann. 1, 18 South. 695; *Dieck v. New Orleans City & L. R. Co.*, 51 La. Ann. 262, 25 South. 71; *Canedo v. New Orleans & C. R. Co.*, 52 La. Ann. 2149, 28 South. 287; *Moore v. Lindell R. Co.*, 176 Mo. 538, 75 S. W. 672; *Ries v. St. Louis Transit Co.*, 179 Mo. 1, 77 S. W. 734; *Riska v. Union Depot R. Co.*, 180 Mo. 168, 79 S. W. 445; *Petty v. St. Louis & M. R. R. Co.*, 179 Mo. 666, 78 S. W. 1003; *Brown v. Elizabeth, P. & C. J. R. Co.*, 68 N. J. L. 618, 54 Atl. 824; *McGrath v. North Jersey St. R. Co.*, 66 N. J. L. 312, 49 Atl. 523; *Hageman v. North Jersey St. R. Co.*, 74 N. J. L. 279, 65 Atl. 834; *Thompson v. Buffalo R. Co.*, 145 N. Y. 196, 39 N. E. 709; *Baxter v. Auburn & S. Elec. R. Co.*, 190 N. Y. 439, 83 N. E. 469; *Pinder v. Brooklyn Heights R. Co.*, 173 N. Y. 519, 66 N. E. 405; *Smith v. City R. Co.*, 29 Ore. 539, 46 Pac. 136, 780; *Wolf v. City R. Co.*, 45 Ore. 446, 72 Pac. 329, 78 Pac. 668; *Boring v.*

*Union Traction Co.*, 211 Pa. St. 594, 61 Atl. 77; *Watkins v. Union Traction Co.*, 194 Pa. St. 564, 45 Atl. 321; *Tesch v. Milwaukee Elec. R. & L. Co.*, 108 Wis. 593, 84 N. W. 823, 53 L. R. A. 618; *Goldmann v. Milwaukee Elec. R. & L. Co.*, 123 Wis. 168, 101 N. W. 384; *Beerman v. Union R. Co.*, 24 R. I. 275, 52 Atl. 1090; *Price v. Rhode Island Co.*, 28 R. I. 220, 66 Atl. 200, 125 Am. St. 736; *Dunn v. Old Colony St. R. Co.*, 186 Mass. 316, 71 N. E. 557; *Blackwell v. Old Colony St. R. Co.*, 193 Mass. 222, 79 N. E. 335; *Fitzgerald v. Boston Elev. R. Co.*, 194 Mass. 242, 80 N. E. 224; *Hooks v. Huntsville R. L. & P. Co.*, 147 Ala. 700, 41 South. 273; *Berger v. Rapid Transit Co.*, 141 Fed. 120. And where one looks or listens, but fails to see or hear a car which is plainly visible for some distance, he is nevertheless guilty of contributory negligence. *Willis v. Boston & N. St. R. Co.*, 202 Mass. 463, 89 N. E. 31; *Russell v. Minneapolis St. R. Co.*, 83 Minn. 304, 86 N. W. 346; *Farese v. North Jersey St. R. Co.*, 76 N. J. L. 457, 69 Atl. 959; *Stassen v. New York City R. Co.*, 52 Misc. Rep. 577, 102 N. Y. Supp. 468; *Madigan v. Third Avenue R. Co.*, 68 App. Div. 123, 74 N. Y. Supp. 143; *Newcomb v. Metropolitan St. R. Co.*, 36 Misc. Rep. 787, 74 N. Y. Supp. 858; *Nugent v. Philadelphia Traction Co.*, 181 Pa. St. 160, 37 Atl. 206; *Mathews v. Rhode Island Co.* (R. I.), 77 Atl. 865. So, also, a pedestrian is guilty of contributory negligence, as a matter of law, where he looks only when he is some distance from the track and does not look again for the approach of the car before stepping upon the track. *Wecker v. Brooklyn etc. R. Co.*, 136 App. Div. 340, 120 N. Y. Supp. 1020; *Glynn v. New York City R. Co.*, 110 N. Y. Supp. 836; *Ayres v. Forty-Second St. etc. R. Co.*, 54 Misc. Rep. 639, 104 N. Y. Supp. 841; *Lynch v. Third Avenue R. Co.*, 88 App. Div. 604, 85 N. Y. Supp. 180; *Keough v. Interurban St. R. Co.*, 92 N. Y. Supp. 733; *Healy v. United Traction Co.*, 115 App. Div. 868, 101 N. Y. Supp. 331; *Solomon v. New York City R. Co.*, 50 Misc. Rep. 557, 99 N. Y. Supp. 529; *Morice*

*v. Milwaukee Elec. R. & L. Co.*, 129 Wis. 529, 109 N. W. 567; *Denver City Tramway Co. v. Cobb*, 164 Fed. 41; *Pittsburgh R. Co. v. Cluff*, 149 Fed. 732; *Merritt v. Foote*, 128 Mich. 367, 87 N. W. 262; *Ross v. Metropolitan St. R. Co.*, 113 Mo. App. 600, 88 S. W. 144; *Paul v. United Rys. Co. of St. Louis*, 152 Mo. App. 577, 134 S. W. 3; *Kraut v. Public Service R. C.*, 79 N. J. L. 408, 75 Atl. 165; *Davis v. Detroit United R. Co.*, 162 Mich. 240, 127 N. W. 323. Submitting to the jury the issue of the "last clear chance," was misleading and reversible error. *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51; *Rissler v. St. Louis Transit Co.*, 113 Mo. App. 120, 87 N. W. 578; *Guyer v. Missouri Pac. R. Co.*, 174 Mo. 344, 73 S. W. 584; *Gabriel v. Metropolitan St. R. Co.*, 130 Mo. App. 651, 109 S. W. 1042; *Gumm v. Kansas City Belt R. Co.*, 141 Mo. App. 306, 125 S. W. 796; *Hartman v. St. Louis Transit Co.*, 112 Mo. App. 439, 87 S. W. 86; *St. Louis, I. M. & S. R. Co. v. Woodward*, 70 Ark. 441, 69 S. W. 55; *Atchison etc. R. Co. v. Baker* (Ind. Ter.), 104 S. W. 1182; *Atchison etc. R. Co. v. Baker*, 21 Okl. 51, 95 Pac. 433; *Colorado & S. R. Co. v. Thomas*, 33 Colo. 517, 81 Pac. 801, 70 L. R. A. 681; *Atchison etc. R. Co. v. Wells*, 56 Kan. 222, 42 Pac. 699; *Gulf, C. & S. F. R. Co. v. Johnson*, 91 Tex. 569, 44 S. W. 1067; *Powers v. Des Moines City R. Co.*, 143 Iowa 427, 121 N. W. 1095; *Doherty v. Des Moines City R. Co.*, 137 Iowa 358, 114 N. W. 183; *Coal Run Coal Co. v. Coughlin*, 19 Ill. App. 412; *Chicago & A. R. Co. v. Robinson*, 106 Ill. 142; *Denman v. Johnston*, 85 Mich. 387, 48 N. W. 565; *Henderson v. Detroit Citizens' St. R. Co.*, 116 Mich. 368, 74 N. W. 525; *Bennichsen v. Market St. R. Co.*, 149 Cal. 18, 84 Pac. 420; *Louisville & N. R. Co. v. Joshlin*, 33 Ky. Law 513, 110 S. W. 382; *Louisville R. Co. v. Buckner's Adm'r* (Ky.), 113 S. W. 90; *Illinois Cent. R. Co. v. France's Adm'x*, 130 Ky. 26, 112 S. W. 929; *Louisville & N. R. Co. v. Veach's Adm'r*, 129 Ky. 775, 112 S. W. 869; *Southern R. Co. v. Simmons*, 105 Va. 651, 55 S. E. 459; *Chesapeake & O. R. Co.*

*v. Hall's Adm'r*, 109 Va. 296, 63 S. E. 1007; *Fonda v. St. Paul City R. Co.*, 71 Minn. 438, 74 N. W. 166, 70 Am. St. 341.

*Davis & Neal, A. O. Burmeister,* and *Dunkleberger & Heinly,* for respondent, contended, among other things, that the case made a question for the jury. *Traver v. Spokane St. R. Co.*, 25 Wash. 225, 65 Pac. 284; *Shea v. St. Paul City R. Co.*, 50 Minn. 395, 52 N. W. 902; *Burian v. Seattle Elec. R. Co.*, 26 Wash. 606, 67 Pac. 214; *Chisholm v. Seattle Elec. Co.*, 27 Wash. 237, 67 Pac. 601; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191; *Shearer v. Buckley*, 31 Wash. 370, 72 Pac. 76; *Baldie v. Tacoma R. & Power Co.*, 52 Wash. 75, 100 Pac. 162; *Budman v. Seattle Elec. R. Co.*, 61 Wash. 281, 112 Pac. 356; *Tecklenburg v. Everett R. L. & W. Co.*, 59 Wash. 384, 109 Pac. 1036, 34 L. R. A. (N. S.) 784; *Hays v. Tacoma R. & Power Co.*, 106 Fed. 48; *Citizens' St. R. Co. v. Abright*, 14 Ind. App. 433, 42 N. E. 238, 1028; *Citizens' Rapid Transit Co. v. Seigrist*, 96 Tenn. 119, 33 S. W. 920; *Cooke v. Baltimore Traction Co.*, 80 Md. 551, 31 Atl. 327; *Hall v. Ogden City St. R. Co.*, 13 Utah 243, 44 Pac. 1046, 57 Am. St. 726; *Smith v. Union Trunk Line*, 18 Wash. 351, 51 Pac. 400, 45 L. R. A. 169; *Kansas City-Leavenworth R. Co. v. Gallagher*, 68 Kan. 424, 75 Pac. 469, 64 L. R. A. 347. It has been held almost universally that the court cannot fix the place at which the pedestrian shall look; it is a question for the jury. *Hecker v. Oregon R. Co.*, 40 Ore. 6, 66 Pac. 270; *Warren v. Southern Cal. R. Co.* (Cal.), 67 Pac. 1; *Winey v. Chicago, M. & St. P. R. Co.*, 92 Iowa 622, 61 N. W. 218; *Cummings v. Chicago, R. I. & P. R. Co.*, 114 Iowa 85, 86 N. W. 40; *Hicks v. New York, N. H. & H. R. Co.*, 164 Mass. 424, 41 N. E. 721, 49 Am. St. 471; *Louisville & N. R. Co. v. Cooper*, 23 Ky. Law 1658, 65 S. W. 795; *Defrieze v. Illinois Cent. Co.* (Iowa), 94 N. W. 505; *Cookson v. Pittsburg & W. R. Co.*, 179 Pa. St. 184, 36 Atl.

194; *Greene v. Los Angeles Terminal R. Co.* (Cal.), 69 Pac. 694; *Smith v. Baltimore & O. R. Co.*, 158 Pa. St. 82, 27 Atl. 847; *Moore v. Chicago, St. P. & K. C. R. Co.*, 102 Iowa 595, 71 N. W. 569; *Piper v. Chicago, M. & St. P. R. Co.*, 77 Wis. 247, 46 N. W. 165; *Plummer v. Eastern R. Co.*, 73 Me. 591; *Grand Trunk R. Co. v. Ives*, 144 U. S. 408; *Rodrian v. New York, N. H. & H. R. Co.*, 125 N. Y. 526, 26 N. E. 741; *Link v. Philadelphia & Reading R. Co.*, 165 Pa. St. 75, 30 Atl. 820, 822; *Ely v. Pittsburgh, C., C. & St. L. R. Co.*, 158 Pa. St. 233, 27 Atl. 970; *Chaffee v. Boston & L. R. Co.*, 104 Mass. 108; *Henavie v. New York Cent. & H. R. R. Co.*, 166 N. Y. 280, 59 N. E. 901; *Cleveland, C. C. & I. R. Co. v. Harrington*, 131 Ind. 426, 30 N. E. 37. A pedestrian has a right to presume that a car will be operated at a lawful rate of speed. *Riska v. Union Depot R. Co.*, 180 Mo. 168, 79 S. W. 445; *Eckhard v. St. Louis Transit Co.*, 190 Mo. 593, 89 S. W. 602; *Deitring v. St. Louis Transit Co.*, 109 Mo. App. 524, 85 S. W. 140.

PARKER, J.—This action was commenced in the superior court for Pierce county, to recover damages for personal injuries which the plaintiff alleges resulted to him from the operation of one of the street cars belonging to the defendant Tacoma Railway & Power Company. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff, from which the defendants have appealed.

Appellant Tacoma Railway & Power Company is the owner of an electric street railway system in the city of Tacoma. Appellant A. B. Justice was, on the 27th day of July, 1910, an employee of the company in charge of one of its street cars as motorman, when respondent was struck and injured by the car at the crossing of South 52d and M streets in the city. The negligence charged against appellants is, in substance, that the car was being run at an excessive and unlawful rate of speed, and without any warning of its approach to the crossing until too late to enable respondent to

avoid being injured by it while crossing the track on which it was approaching. Appellants deny the negligence charged against them, and affirmatively allege that respondent's injuries were the result of his own want of care and contributory negligence.

The first and principal contention made by counsel for appellants is that the trial court erred in denying their motions for an instructed verdict and for judgment notwithstanding the verdict. This involves their right to have a determination of the cause in their favor upon the evidence as a matter of law, and we will first notice the facts upon which this question must be determined.

The evidence is not free from conflict, but a careful reading of the entire record convinces us that the evidence was sufficient to warrant the jury in regarding the following facts as established thereby. One of the company's lines is a double track street railway running north and south on M street, where it crosses South 52d street. This crossing is in a somewhat thickly populated residence district of the city. At the northwest corner of this crossing is a grocery store building fronting directly upon M street. This is a crossing at which very frequent stops are made by the cars for the purpose of letting off and taking on passengers. The cars run north upon the east track and south upon the west track. Respondent was familiar with the locality and the manner of operating cars there. He had resided for a considerable time some two blocks to the west of the crossing, and was accustomed to go from his home along the south sidewalk of 52d street to take north-bound cars, which, according to custom, stopped at the north sidewalk crossing.

On the morning of July 27, 1910, respondent started from his home to take a north-bound car. He had proceeded but a short distance when he saw a north-bound car coming some distance to the south. He then increased his pace, walking very fast, and also running at least a part of the distance, in order to reach the car when it would stop at the north side-

walk crossing. As he proceeded east along the south side of 52d street, he could not see north along M street any great distance because the grocery store building at the northwest corner obstructed his view to the north, until he reached a point near M street. When he was near M street and about 45 feet from the street car track, he could have seen a car coming from the north on the west track, had such car been within a distance of about 200 feet from the south sidewalk crossing towards which he was going. He then looked to the north along M street and did not see any car coming from that direction. He hurriedly proceeded on his way, then running, and reached the west track at the south sidewalk crossing just after the north-bound car passed that point on the east track, and about the time that car was stopping at the north sidewalk crossing. He intended to pass round to the rear of that car and get on it on the east side, entrance thereto being on that side only because of the double track. While he was crossing the west track and evidently while he was near to the east side thereof, he was struck by a swiftly moving south-bound car and thrown to the south and east, landing near or upon the east track.

He did not look for the coming of the north-bound car after he was about 45 feet from the track, but hurriedly proceeded on his way, evidently thereafter intent only on reaching the north-bound car before it started from the north sidewalk crossing where he expected it to stop. He does not remember of hearing any warning, by bell or whistle, of the approach of the south-bound car. This may be accounted for by the noise of the other car coming to a stop and the rapid succession of events then occurring, though it seems highly probable that a bell warning was given from the south-bound car about the time it passed the north sidewalk crossing and the other car which was there. Such signal was, in any event, given only a very short time before respondent was struck, and while the car was moving very fast.

He says he did not see the south-bound car at any time.
If his story is to be believed, it is evident that that car had
not reached a point where it could be seen by him when he
looked north from a point 45 feet distant from the track, so
the car was then at least 200 feet north of the south side-
walk crossing.    That car passed the north sidewalk crossing
while the other car was there, at a speed of 25 miles an hour,
as estimated by one witness, and another witness, who had
been a street car conductor, estimated its speed at that point
at 30 miles an hour.    These were apparently disinterested
witnesses and seemed to have had fairly good opportunities
for observing the speed of the car, though witnesses for the
appellant disagreed with them.    The brakes were first ap-
plied and an effort made to check the speed of the car at
about the time it passed the north crossing and the other
car.    It had then only 51 feet to run before reaching the
south crossing, where it struck respondent.    Its speed was
checked to some extent before reaching respondent, but it
was evidently then still continuing at a considerable speed,
for it was not finally stopped until it ran a hundred feet or
more after striking respondent.    One witness testified that
it ran 150 feet, arriving at that conclusion by knowing the
width of the lots fronting upon the street and knowing the
place where it finally stopped.

There was then in force in the city of Tacoma an ordi-
nance of the city regulating the speed of street cars within
the city limits, which limited the speed of cars upon double-
track lines in this part of the city to twenty miles per hour.
For the purpose of showing the duty of the motorman in
controlling his car while passing over crossings and passing
other cars while stopped to let off and take on passengers at
crossings, respondent called the superintendent of the com-
pany as a witness, who was interrogated and answered as
follows:

"Q. I will ask you to state whether or not the company had
any rules relative to the operation of a street car in passing

another car standing at a crossing taking on passengers, or just going up to the crossing for the purpose of taking on and letting off passengers? A. Yes, sir.   Q. I will ask you what that rule was?   A. Cars passing another car, discharging or loading passengers are required to reduce speed and sound gong.   Q. Reduce the speed to what?   A. What the motorman would consider a safe rate of speed.  . . .  Q. Would that be for the purpose of enabling him to stop and avoid injuries to people who might get in front of his car? A. Yes, that is the idea.   Q. The object of that rule is to protect passengers who are going to or are taking the other car?   A. It is not altogether; people might be crossing the street and a view of the passing car obstructed by the standing car; that is a rule that is for the safety of any one, pedestrians, horses or passengers or any one else.   Q. For the protection of the public generally?   A. Yes, sir.   Q. There is no particular speed to which it is reduced?   A. No, sir."

We note this evidence, not for the purpose of indicating a violation of rules of the company, but as throwing light upon the question of appellants' negligence in the operation of the car at this point, and as indicating what might be expected from the operation of the car, by a person of ordinary prudence approaching the crossing at that time.

The evidence being sufficient to warrant the jury in believing these facts, argument seems unnecessary to demonstrate that the question of appellants' negligence was for the jury to determine.   The speed of the car, the presence of the street crossing, the presence of the other car stopped at the crossing to let off and take on passengers, the delay in any attempt to check the speed of the car until it was practically upon the crossing at the side of the other car, and the delay in giving any signal of its approach until about that time, it seems to us leaves nothing to be argued upon the question of appellants' negligence, except such argument as might be properly addressed to the jury.   Clearly, this branch of the case does not present a question of law for the court to decide.   Indeed, the argument of learned counsel for appellants gives but little attention to their negligence,

but is addressed almost wholly to the alleged contributory negligence of respondent, which we will now consider.

It is insisted that respondent's failure to look north along M street, where he could have observed the approaching car after he had first looked in that direction from a point about 45 feet from the track, was so plainly contributory negligence on his part that the court should decide, as a matter of law, that he is precluded from recovering damages for the injuries he received even though appellants were negligent. In the early case of *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799, this court expressed its views upon the question of contributory negligence being generally one for the jury, as follows:

"Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury. . . .

"There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law, but we think the case in hand does not fall within either of them. The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. . . . And the second is where the facts are undisputed and but one reasonable inference can be drawn from them. . . . If different results might be honestly reached by different minds, then negligence is not a question of law, but one of fact for the jury."

And in the case of *Traver v. Spokane St. R. Co.,* 25 Wash. 225, 65 Pac. 284, even stronger language was used as follows:

"The great weight of authority is to the effect that, before a court will be justified in taking from the jury the question of contributory negligence, the acts done must be so palpably negligent that there can be no two opinions concerning them."

This doctrine has been adhered to and variously expressed in many other decisions of this court. *Steele v. Northern*

Pac. R. Co., 21 Wash. 287, 57 Pac. 820; *Burian v. Seattle Elec. Co.*, 26 Wash. 606, 67 Pac. 214; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191; *Shearer v. Buckley*, 31 Wash. 370, 72 Pac. 76; *Budman v. Seattle Elec. Co.*, 61 Wash. 281, 112 Pac. 356; *Williams v. Northern Pac. R. Co.*, 63 Wash. 57, 114 Pac. 888.

It is a matter of some interest, as well as of value in this connection, to notice the reason of this, and ask ourselves why it is more rare for a case to be taken from the jury upon the ground of contributory negligence than upon the ground of want of proof of the defendant's negligence? Contributory negligence involves the consideration of affirmative proof of such negligence. It is not something that meets the plaintiff's right to recovery by a mere assertion of it on the part of a defendant. It is not a denial; but an affirmation which requires proof before it is of any effect. Hence, when a court decides, as a matter of law, that an injured plaintiff is precluded from recovering damages for his injury, because of his own negligence contributing thereto, the court is in effect deciding that facts have been affirmatively proven which conclusively show, as a matter of law, such contributory negligence. It is not easy to see why the question of plaintiff's contributory negligence should be decided by the court as a matter of law in the affirmative, under any different circumstances or required degree of proof than that the question of defendant's negligence should be decided by the court as a matter of law in the affirmative. It is true that the affirmative proof need not necessarily come from defendant's evidence. It may appear in the plaintiff's evidence. The question, nevertheless, involves an affirmative finding in order to be decided as a matter of law in defendant's favor. This is quite a different matter from withdrawing a case from the jury because of the failure of required affirmative proof to sustain a claimed right. In 1 Thompson on Negligence, § 425, that learned author observes:

"Contributory Negligence Generally a Question of Fact

for the Jury.—As we shall see, the statement is often loosely made in judicial opinions that *negligence* is generally a question of fact for the jury; whereas, the true rule, so far as there can be any rule, is that whether there has been contributory negligence on the part of the plaintiff is a question for the jury, under the same circumstances and subject to the same limitations as the question whether there has been negligence on the part of the defendant. Loose expressions, often found in judicial opinions, to the effect that contributory negligence is generally a question for a jury, are concessions to the obvious principle that whether a man, woman, or child has used, in a particular situation, the care which such persons ordinarily use, or whether they have, under the circumstances, used reasonable care, or acted reasonably, is a question which, as a general rule, is better determined by twelve men, on a comparison of their experience, than by a single legal scholar on the bench."

At § 433 the author makes further observations of interest along this line of thought. It would indeed be a remarkable case that would call for a directed verdict against a defendant upon the ground that his negligence had been so conclusively proven as to enable the court to so decide as a matter of law; and yet there seems to be no more reason for expecting such disposition of personal injury cases occasionally against a defendant, than to expect directed verdicts against a plaintiff by reason of his contributory negligence. Both involve an affirmative showing of negligence against an equally strong presumption to the contrary. These observations suggest the exercise of great caution in deciding, as a matter of law, that a defendant is guilty of contributory negligence.

Now, in view of the facts we have summarized as occurring in this case, can the minds of reasonable men differ upon the question of the contributory negligence of respondent in proceeding towards and across the track without looking to the north, the direction from which he knew a car might come, after he had passed a point 45 feet from the track? This question cannot be determined by any hard and fast rules. The law does not fix, with any degree of exactness, the meas-

ure of respondent's duty under these circumstances.  Of course, it can be said that he was required to use his senses and exercise such care as a man of ordinary prudence would be expected to exercise under such circumstances; but this, in substance, is as far as it is practicable for the law to go in defining his duty.  This is not a steam railway, but a street railway in a populous residence district of the city. Hence, the rule of stop, look and listen has no application here as a rule of law defining respondent's duty, though, of course, the extent of the use of his faculties in that regard, as shown by the evidence, is a circumstance bearing upon the degree of care he exercised.  In *Roberts v. Spokane St. R. Co.*, 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184, it is said:

"The degree of care required in crossing a highway and steam railway, in looking up and down the track, is not necessarily the test of care required in crossing the track of a street railway on a public street.  Failure to look and listen before crossing the tracks of an electric railway in a public street, where the cars have not the exclusive right of way, is not negligence as a matter of law."

In the very recent case of *Morris v. Seattle, Renton & Southern R. Co.*, 66 Wash. 691, 120 Pac. 534, this rule is again recognized, and numerous other decisions of this court cited in support thereof.  The evidence was sufficient to warrant the jury's believing that the appellant looked from a point 45 feet from the track, and could see only about 200 feet north along the track, and did not see any car approaching from that direction.  This fact would in no event require any greater degree of care on his part than as if he had seen a car approaching 200 feet away.  That is, he was warranted in governing his actions as if he saw a car approaching at that distance.  He surely was not proceeding in the face of any greater hazard than that condition would suggest to him.  This court has held that a pedestrian is justified in ordering his movements upon the assumption that street cars will be operated, not only in conformity with local

laws, but with a high degree of care and with due regard for public travel upon the street. *Chisholm v. Seattle Elec. Co.,* 27 Wash. 237, 67 Pac. 601; *Mallett v. Seattle, Renton & Southern R. Co.,* 66 Wash. 251, 119 Pac. 743. Respondent being entitled to act upon this assumption, it cannot be decided, as a matter of law, that he was guilty of contributory negligence in hurriedly proceeding upon his way across the track, when it was the duty of appellants, in any event, to keep the speed of the car within the limit of 20 miles per hour, and to check the speed of the car upon approaching the crossing; especially in view of the presence of the other car receiving and discharging passengers there, that point being between respondent and the approaching car and about 50 feet distant from where he intended to cross the track. Even if the car had proceeded at the extreme speed limit allowed by the ordinance, over the entire 200 feet, the jury might still conclude that it would not have reached the south crossing before respondent would have crossed over the track at that point, in view of the speed at which he was proceeding. But we have seen that respondent had a right to presume, not only that the speed of the car would in no event be over 20 miles per hour, but that its speed would be checked before reaching the north crossing, especially in view of the presence of the other car there; from all of which he might well conclude that he had ample time to cross the track at or near the south crossing before any car coming from the north could possibly reach that point, by proceeding at proper speed and observing the proper caution upon passing the north crossing and the other car there. The supreme court of Iowa in *Powers v. Des Moines City R. Co.,* 143 Iowa 427, 121 N. W. 1095, makes some observations in a case somewhat like this, which are quite appropriate here, as follows:

"The unlawful speed at which the car was being operated has a bearing upon the question of plaintiff's contributory negligence, for he had a right to assume when he started to

cross the street, having seen the car approaching a block away, that it was running at a lawful rate of speed, and, if he could cross the track in safety before the car could reach him coming at that rate of speed, he was not chargeable with contributory negligence, unless he had become aware that it was running at a higher rate of speed. It was necessary for plaintiff to walk only about thirty feet in a diagonal direction to cross the track, and it is not contended that, had the car been approaching at a speed not exceeding eight miles an hour, he would not have been across the track and out of danger before the car reached the street crossing.

"The general claim for defendant, made in argument, is that plaintiff must have known that the car was coming at a rapid rate on account of the dust and noise to which his companions, as witnesses, testified, and that it was his duty to look out for danger before he went upon the track; but, if, as a matter of fact, plaintiff, having observed the car a block distant, proceeded to do that which would have been safe if the car was going at a lawful rate of speed, it certainly was not conclusively contributory negligence on his part that he did not stop before reaching the track to make another observation of the car, unless he was aware that the danger was greater than that which he had cause to anticipate from his first observation."

That decision is valuable as showing how the solution of the question of respondent's contributory negligence does not depend alone upon his own acts, but that such question may be largely influenced by the negligence of appellants. This is not the doctrine of comparative negligence, which seems to be repudiated by most of the courts. It simply involves the right of respondent to govern his actions in the light of such actions on the part of appellants as a reasonably prudent person in his situation would anticipate. *Kansas City-Leavenworth R. Co. v. Gallagher*, 68 Kan. 424, 75 Pac. 469, 64 L. R. A. 344.

Counsel for appellants call our attention to, and particularly rely upon, the following decisions of this court: *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488; *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458;

*Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51.
In the *Skinner* case, the car was not running at a dangerous
or unlawful rate of speed. The person injured was moving
slowly and deliberately across the track, and stepped upon
the track at a time when the car would have to be stopped
within a distance of ten feet; that is, he stepped upon the
track immediately in front of the car when it was moving
towards him, and was a very short distance from him, and
there did not appear to be any negligence on the part of the
motorman which misled the injured person. In the *Helliesen*
case, there was not involved any question of excessive speed
of the car. The injured person says she looked a moment
before she started across the track and saw no car coming,
yet the physical facts proved positively that the car was
coming and at a distance not forty feet from her. The de-
cision seems to be upon the theory that she stepped upon the
track directly in front of the car when it was close to her
and when she, an instant before, had looked towards it. The
*Fluhart* case may not be so easily distinguished from this one;
nevertheless, we think it is distinguishable, and that it is
very close to the line between questions of law and fact. It
appeared in that case that respondent, when he looked in the
direction from which the car was coming, could see the dis-
tance of a block, that he was then within six or seven feet of
the track, moving leisurely, that he proceeded on his way,
and was struck by the outer edge of the front of the car
before he reached the track. Indeed, had his speed been re-
tarded but the least bit he would have run against the car
instead of the car running against him. This occurred but
an instant after he said he looked in the direction from which
the car came and saw no car coming. This, we think, is
enough to distinguish that case from this, even though in
that case the speed of the car seems to have been excessive.
We are of the opinion that this cause was properly submitted
to the jury, and that the question of respondent's contribu-

tory negligence could not have been decided as a question of law.

The court instructed the jury touching the doctrine of last clear chance, in substance, that although they might believe that respondent was guilty of negligence, if they should believe that the motorman in charge of the car saw respondent's dangerous position and could thereafter have prevented the accident, but failed to do so, that the verdict should be for the plaintiff, because the motorman was obliged to exercise a reasonable degree of care to prevent the accident after seeing respondent's dangerous position, although he may have been negligent in getting in the way of the car. It is not contended but that this is correct as an abstract proposition of law, but that there is no evidence justifying the giving of any such instruction. It may be conceded, for the sake of argument, that the instruction upon this subject was technically erroneous, because it appears from the evidence that the motorman did exercise all possible efforts to prevent injuring respondent after he discovered respondent's dangerous position. This instruction might be considered prejudicially erroneous if it were not for the fact that the record affirmatively shows that it was not prejudicial. Certain special interrogatories were submitted to the jury touching respondent's contributory negligence. Among others was the following interrogatory and the jury's answer thereto:

"Q. Did the plaintiff in approaching the track upon which he was struck, and in going upon same, exercise the same degree of care and diligence as would have been exercised by an ordinarily careful and prudent man having due regard for his own safety under similar circumstances and conditions? A. Yes."

This, we think, conclusively shows that the jury did not consider, and were not in the least misled by, this technically erroneous instruction. Having found that respondent was not negligent, the jury, of course, gave no consideration to the question of the circumstances under which he might have

recovered if he had been negligent. We think the technical error in giving this instruction is affirmatively shown to be free from prejudice against appellants' rights.

The court, among others, gave the jury the following instruction:

"You are instructed that as the plaintiff approached the street car track at the point of the accident he had a right to presume that no street car would be run along such track in violation of the ordinances or laws governing the rate of speed of cars at that point; and while this presumption that the defendants would not run a car at an unlawful rate of speed, if it was so run, would not relieve the plaintiff of the obligation to exercise due care for his own safety, yet it is a circumstance which you may take into consideration in determining what is due care under such conditions, and in determining whether the plaintiff did all that an ordinary, prudent man would have done under similar circumstances to escape injury in case the law had been obeyed."

It is insisted that this instruction is prejudicially erroneous as against appellants. It is first contended that it is so because respondent did not testify that he knew that there were any ordinances or laws governing the speed of cars, nor that he relied upon the fact that a car would not exceed the speed limit. Counsel argue that the speed-limit ordinance can avail respondent nothing, because he is not shown to have been relying upon it as a matter of fact. We think, however, that it was proper for the jury to understand that respondent had a right to presume that the ordinance was not being violated and that respondent knew of the existence of the ordinance; this upon the theory that all persons are presumed to know the local laws. It has been doubted that evidence is admissible to prove that an injured person, as a matter of fact, knew of the existence of such an ordinance. *Moore v. Chicago, St. Paul & K. C. R. Co.*, 102 Iowa 595, 71 N. W. 569; *Eckhard v. St. Louis Transit Co.*, 190 Mo. 593, 89 S. W. 602. In the latter case the court said, "Deceased had a right to presume that the defendant would obey

the ordinance of the city regulating the speed of railroad trains." This was said when there was evidently no evidence in the case as to what the actual knowledge of the deceased was as to such ordinance. The decisions of this court above cited are in harmony with this view.

Some contention is made that the instruction as a whole has the effect of taking from the jury the consideration of the question of respondent's contributory negligence and permitting him to recover in any event if the speed of the car was unlawful. We think a careful reading of the instruction will not support such contention, as the court therein plainly told the jury that, while respondent was entitled to presume that defendants' car would be kept within the ordinance speed limit, yet if such limit was exceeded, respondent would not thereby be relieved of the obligation to exercise due care. Indeed, it is plain that that presumption was stated by the court to the jury only as a circumstance bearing upon the question of respondent's due care. We conclude that the instruction was not erroneous.

Other instructions requested by counsel for appellants were refused by the court, upon which error was assigned. An examination of these, however, convinces us that they were embodied in instructions which were given by the court, in so far as appellants were entitled to have them given. We do not think they call for further discussion. We are of the opinion that the evidence was such that neither the question of appellants' negligence nor of respondent's contributory negligence could be decided as a question of law, but that the cause was properly submitted to the jury upon evidence which supports the jury's findings, and that there was no prejudicial error in the giving or refusing of instructions. The judgment is affirmed.

DUNBAR, C. J., and GOSE, J., concur.