[No. 11558.  Department One.  April 15, 1914.]

ELMER BEEMAN, *Respondent*, v. PUGET SOUND TRACTION
LIGHT & POWER COMPANY, *Appellant*.[1]

STREET RAILWAYS—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLI-
GENCE—EVIDENCE—SUFFICIENCY.  A pedestrian struck by a street car
at a crossing, is guilty of contributory negligence, as a matter of
law, where, before leaving the curb, he looked up the street and
saw the car approaching about four hundred and fifty feet away,
with its headlight burning, and proceeded to pick his way across
the muddy street, going upon the tracks without again looking, al-
though the car may have been exceeding the speed limit.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered April 14, 1913, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained by a pedestrian, struck by a
street car at a crossing.  Reversed.

*James B. Howe* and *H. S. Elliott*, for appellant.

*Frank E. Green*, for respondent.

CHADWICK, J.—Plaintiff approached a crossing on one of
the streets in the city of Seattle.  When about to step from
the sidewalk, he looked up the street and saw a street car
about four hundred and fifty feet away.  The car was coming
toward him, and was moving at a rate of speed alleged to be,
and which the jury found to be, approximately thirty miles
an hour.  The head light of the car was lighted.  The cross-
ing was muddy and plaintiff was engaged in picking his way
across the street when he was struck by the car and injured.
Plaintiff was slightly deaf.  He does not contend that the
gong was not sounded.  At the close of plaintiff's case, defend-
ant interposed a motion for a nonsuit.  This being denied,
the case went to the jury.  Defendant has appealed from an
adverse verdict.  Several errors are assigned, but we find it
unnecessary to discuss them as several propositions, inas-

[1]Reported in 139 Pac. 1087.

much as the controlling question of law is raised by reference to an instruction given, and to one refused. The court instructed the jury:

"If, under the facts in this case as shown by the evidence, you find that it was the duty of the plaintiff as a reasonably careful and a reasonably prudent man to have looked just before he stepped upon the tracks of the defendant to see whether or not he had time to cross the tracks before the approaching car came along, and you further find that if he had looked he would have discovered the car which struck him in time to have avoided a collision therewith, in such case, plaintiff was guilty of contributory negligence barring his recovery, and your verdict must be for the defendant."

Appellant requested the following instruction:

"I further instruct you that, under the facts and circumstances of this case, it was the duty of the plaintiff before crossing the track at the point where the accident occurred, to look for approaching eastbound cars, and I instruct you that, if you find from the evidence that the plaintiff failed to look to the west for approaching cars before crossing the track, when if he had looked he would have discovered the car which struck him in time to have avoided a collision therewith,—in such case the plaintiff was guilty of contributory negligence barring his recovery, and your verdict must be for the defendant."

It will thus be seen that the question whether a duty to look was a question of fact or of law under the particular facts of this case, was sharply drawn. Respondent relies on the case of *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351, and *Merwin v. Northern Pac. R. Co.*, 68 Wash. 617, 123 Pac. 1019. There is language to be found in the *Richmond* case that would seem to sustain respondent, but it cannot be applied in this case because of the divergent facts. In the *Richmond* case, the plaintiff, when forty-five feet from the street line, had a view of the south-bound track two hundred feet away. No car was in sight. The court held that, not having seen a car, the plaintiff was not guilty of contributory negligence in continuing his way without

looking; that he had a right to presume that a car, if it did approach, would not exceed the speed limit, and that if it did not, he would have time to cross the track. Here we have a contrary state of facts. Plaintiff saw the car and knew that one was approaching. He is charged with every duty that such notice implies. The holding of the *Richmond* case is that a person does not have to keep in mind something that he did not know of, but could proceed in the security afforded by a presumption that the driver of a street car would not be negligent. Knowledge was there lacking. Here, it is the principal factor in the equation. Presumptions are indulged when certain proof is wanting; they are never allowed to displace facts.

" 'Presumptions' as happily stated by a scholarly counselor *ore tenus*, in another case, 'may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' That presumptions have no place in the presence of actual facts disclosed to the jury, or where plaintiff should have known the facts had he exercised ordinary care, is held in many cases, of which samples are, *Reno v. Railroad*, 180 Mo. 1. c. 483; *Nixon v. Railroad*, 141 Mo. 1. c. 439; *Bragg v. Railroad*, 192 Mo. 331. To give place to presumptions on the facts of this case, is but to play with shadows and reject substance." *Paul v. United Rys. Co.*, 152 Mo. App. 577, 134 S. W. 3.

While no absolute duty to stop, look, and listen rests upon one who is about to cross a street car track (*Roberts v. Spokane St. R. Co.*, 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184; *Richmond v. Tacoma R. & Power Co.*, supra), we do not understand that this or any other court has ever held that one, knowing a street car to be approaching, can shut his eyes to the fact and step heedlessly in front of it under the mental assumption that the car will not overtake him. Accidents are not ordained or prescribed. They happen, and generally it is the unexpected that happens. What might happen is one of the cogent factors in determining questions of relative duty. That the duty of the motorman and the pedestrian

is relative has been frequently held by this court. How far a pedestrian, having knowledge that a car is approaching, may go in acting upon the presumption that a car will not be operated at an excessive rate of speed or in defiance of the rights of others, is a question that is not altogether strange to the courts. In a case very much like the one at bar, the court of appeals in the state of Missouri said:

"He had the right to indulge in the presumptions that the motorman would not run the car at a negligently high rate of speed; that he would sound the bell as the car neared the crossing and would reduce its speed to avoid a collision, but this did not absolve him from the performance of his duty to observe the advancing car. A person approaching a railroad crossing whether in the country or in the city is not permitted to rely entirely on such presumptions, but must make reasonable use of his senses to guard his own safety and the failure to do this is negligence. The duty thus to protect one's own safety continues until the crossing has been traversed. A person in the exercise of reasonable care who is unhindered and whose view is unobstructed cannot take a last look at some distance from the crossing whether it be twenty feet or two thousand feet away and then shut his eyes and go blindly forward relying implicitly on the presumption that the servants of the railroad company will not be negligent in the running of its trains or cars." *Cole v. Metropolitan St. R. Co.*, 121 Mo. App. 605, 97 S. W. 555.

This case was followed in *Grout v. General Elec. R. Co.*, 125 Mo. App. 552, 102 S. W. 1026, where the court said:

"He was justified in indulging in this presumption, but, as we have recently declared in a number of cases, this did not absolve him from the performance of the duty of attending to his own safety. He had no right to rely solely on a presumption, but should have used his senses to acquaint himself with the actual circumstances open to his observation, and had he done this, it is very clear, he would not have entered into danger. Had he looked at the car with any degree of attentiveness, he could have seen that it was coming at a high rate of speed, and had he looked again before entering the sphere of danger, he would have known that it was highly dangerous for him to attempt to cross. The thing that

brands his conduct as censurable in law is the fact that with
the car in striking distance, and with every opportunity to
protect himself, he blindly risked his life and limb on a mere
presumption that others would be more careful than he."

"The law in regard to pedestrians entering upon the tracks
of a railroad company, under the circumstances shown by
the plaintiff's own testimony in this case, is that while ordi-
nary care does not usually require a traveler to look and listen
constantly at all points of his approach to the railroad cross-
ing, it does require that he should look just before going
upon the track or so near thereto as to enable him to cross
before a train within the range of his view going at the usual
rate of speed would reach the crossing." *Paul v. United Rys.
Co., supra.*

Whether a pedestrian should have known of the approach of
a street car would no doubt be, in almost any conceivable
case, a question for the jury; but when admitting that he
knew it, there is a duty—not a duty owing to another, but a
duty owing to self—to keep in mind the fact that a car is
approaching; for as is most aptly said by the Wisconsin
court in a street car case:

"He is not at liberty to calculate how long it will take an
approaching train to reach the crossing if running at a law-
ful and usual rate of speed. He must anticipate that it may
be running at an excessive speed and may reach the crossing
before he can safely pass it." *Grimm v. Milwaukee Elec. R.
& Light Co.*, 138 Wis. 44, 119 N. W. 833.

Coming to our own cases, we cannot escape the logic of the
holding of this court in the case of *Johnson v. Washington
Water Power Co.*, 73 Wash. 616, 132 Pac. 392:

"It is clear that the car was much nearer the appellant,
when he entered the street and when he looked the second time,
than he estimated it to be; and while he may have concluded
that he had plenty of time to cross in front of it, he did not
in fact have sufficient time, and did not verify his estimate by
taking a look immediately before he entered the place of
danger. His injury was clearly, therefore, contributed to
by his own negligence. . . . By stopping at any time be-
fore he reached the railway track, the appellant would have

been in a place of safety, and for one in his situation, knowing as he must have known had he looked in the direction of the car that it was almost upon him, to stop before attempting to cross the track would have been the exercise of only ordinary prudence and care. A motorman has the right to assume that a person on the street will exercise such care to avoid injury, and he may lawfully act on that assumption, until the conduct of the person warns him to the contrary."

This is in line with what has been said in *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458, where the liability of the street railway companies to a pedestrian who should have seen an approaching car was considered. It was there contended that the injured party was justified in attempting to cross a street without looking and without listening, under the authority of the case of *Roberts v. Spokane St. R. Co.*, *supra*. The rule was admitted, but the court said:

"Such a rule does not mean that one will heedlessly and carelessly cross the track without using his senses for his protection; . . . What would be due care under certain circumstances would not be due care under other and different circumstances; and in determining this question this court has refused to predicate its answer alone upon the fact that it did not appear that the person about to cross the track looked or listened, and say such a failure of itself alone constitutes negligence in law. Other facts existing and present and affecting the situation must be given their due weight in determining the question of contributory negligence. In other words, it is not alone, Did the pedestrian look and listen? and upon answering that question in the negative, say it is negligence *per se*, and there can be no recovery. But the test is, did the pedestrian, under all the circumstances, use such a degree of care, caution, and prudence as an ordinary, prudent and careful pedestrian would use under like circumstances; and in answering such test, this court has in a number of cases held that the failure to look and listen was a fact to be considered in determining whether or no there was contributory negligence as a matter of law. . . . The *Roberts* case cites as authority for the rule therein announced: *Robbins v. Springfield St. R. Co.*, 165 Mass. 30, 42 N. E. 334, and *Shea v. St. Paul City R. Co.*, 50 Minn. 395,

52 N. W. 902. An examination of the Massachusetts and Minnesota cases will show that the announcement of such a rule was never intended to be construed as a holding that failure to look and listen was not a circumstance to be considered in determining the question of contributory negligence as a matter of law. We refer to a number of such cases subsequent to the *Robbins* case."

When respondent was about to step on the track, the car must have been only a few feet away, with its headlight burning, and it would seem that his responsibility should be measured by the rule laid down in the *Johnson* and *Helliesen* cases. Then, too, it seems impossible to distinguish this case from the case of *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488, for the real question is not to be resolved by reference to the fact that respondent saw the car when four hundred and fifty feet away and walked blindly under the cloak of presumption; but, rather, should he have seen the car when he stepped on the track, considering its immediate proximity, and the facts and circumstances then existing and immediately preceding. To hold otherwise, would be to say that a pedestrian, having knowledge, is not bound to sense the possibilities that attend known facts and may go at will, relieved of all responsibility. Nor do we understand that this doctrine is denied in the *Richmond* case. It is there said:

"Of course, it can be said that he was required to use his senses and exercise such care as a man of ordinary prudence would be expected to exercise under such circumstances."

What is the meaning of "such circumstances?" Certainly it does not mean that a man who knows that a car is approaching is to be bound by the same rule as one who does not know it, and who, under the facts, is not necessarily bound to know it. This distinction is noticed in Judge Parker's reference to the case of *Morris v. Seattle, Renton & S. R. Co.*, 66 Wash. 691, 120 Pac. 534. He says:

· "He surely was not proceeding in the face of any greater hazard than that condition [seeing no car within two hundred feet] would suggest to him."

To hold otherwise, would be to relieve a pedestrian of all duty, and hold the defendant guilty solely because it had exceeded the speed limit; whereas, the law is that, although the car may have been operated in excess of the speed limit, defendant would not be liable unless such excess of speed was the proximate cause of the injury.

The case of *Merwin v. Northern Pac. R. Co.*, like the *Richmond* case, may be distinguished upon the facts. The driver did not see the approaching train; whether he should have seen it under the facts disclosed was properly held to be a question for the jury.

The judgment of the lower court is reversed, with directions to dismiss.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.